MARIA ENGELBRECHT, Appellant, *vs.* FRED ENGELBRECHT
*et al.* Appellees.

*Opinion filed October 28, 1926.*

1. MISTAKE—*when equity will grant relief although there is no
fraudulent intent.* In order for equity to grant relief against a
misrepresentation it is not necessary that it be made with a fraudu-
lent intent, and where a widow is induced to sign an agreement
settling property rights on the basis of a false representation that
her marriage was not legal, the misrepresentation, although inno-
cently made, operates as a fraud upon her, and equity will not per-
mit those who led her into the error to profit by the agreement.

2. SAME—*when fiduciary and trust relations exist—adminis-
tration.* Where a widow is dependent on an adopted son in her
business transactions a fiduciary relation exists between them,
and where said son is executor of the deceased husband's will
and the widow a beneficiary they occupy the relation of trustee
and *cestui que trust.*

3. SAME—*when equity will grant relief against mistake of law.*
Where there is a marked disparity in the position and intelligence
of the parties, so that they have not dealt on equal terms, and where
the party obtaining property in the transaction is the dominant
party and has taken advantage of the confidence reposed in him
by the party giving up the property, equity will grant relief not-
withstanding the mistake under which the agreement was made
was one of law.

4. CONTRACTS—*when family settlement will be set aside.* While
courts favor a compromise of controversies arising among mem-
bers of the same family, such settlement will be set aside when
accompanied by misrepresentation and imposition by those in whom
confidence is reposed and who have unconscionably benefited by
the settlement.

5. DEEDS—*what is sufficient to create joint tenancy.* To create
a joint tenancy it is sufficient if the language employed be such as
to clearly and explicitly show that the premises are to pass in joint
tenancy, and where the deed recites that the grantees take "as joint
tenants" it is sufficient to satisfy the statute, and it is not neces-
sary to add the words "and not as tenants in common."

6. JOINT TENANCY—*when certificates of deposit payable to hus-
band or wife do not create a joint tenancy.* Where a promissory
note or certificate of deposit is made payable to two or more per-

sons without designating the portion each is to take, the law presumes that they are to take equal shares; and where certificates of deposit are made payable to either husband or wife on return of the certificates properly endorsed, without any contract or direction to the bank to pay to the survivor whatever remains in the fund at the death of either party, there is no gift of the whole to the survivor. (*Reder* v. *Reder,* 312 Ill. 209, distinguished.)

APPEAL from the Circuit Court of McLean county; the Hon. EDWARD BARRY, Judge, presiding.

COSTIGAN & WOLLRAB, for appellant.

SIGMUND LIVINGSTON, for appellees.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This appeal is from a decree of the circuit court of McLean county sustaining exceptions to the master's report and dismissing for want of equity the bill filed by Maria Engelbrecht, appellant, to set aside a certain agreement entered into by the parties to this suit and to declare vested in appellant certain real and personal property which the bill alleges was held by appellant and her husband in joint tenancy.

The facts established by the evidence are substantially as follows: Appellant is the widow of Chris Engelbrecht, who died testate January 11, 1922. Prior to her marriage to Chris appellant obtained a divorce from her first husband, John Zech. Appellee Fred Engelbrecht is the nephew of Chris' first wife and is the adopted son of Chris. Bertha Engelbrecht is his wife. After the marriage of Chris and Maria they lived on a 22-acre truck farm near Bloomington. Fred lived with them until he was twenty-four years old. All of them worked on the farm and their earnings were kept in a common family fund. After Fred's marriage he purchased a house and lot in the city of Bloomington and occupied it as his home. From the time of

323—14

Maria's marriage to Chris she treated Fred as her son and Fred treated her as his mother. Chris and Maria were uneducated persons, who had emigrated from Germany to this country, and they depended on Fred for advice in their business transactions. When Maria secured her divorce she received $1100 from Zech. When she married Chris she added this money to what he had and all of it was used in financing their truck business. In 1916 Fred and his wife traded their town property to his parents for their farm, giving as additional consideration $400 in cash and a note for $1400 secured by a mortgage on the farm. This note was unpaid when Chris died. The deed made by Fred and his wife conveyed the town property to "Christian Engelbrecht and Maria Engelbrecht, his wife, as joint tenants." When Chris died there was on deposit in two banks in Bloomington $1610, evidenced by six certificates of deposit. All of these were made payable to Chris and Maria, five of them containing the statement, "payable to the order of either on return of this certificate properly endorsed," and the sixth being "payable to the order of self or wife in current funds on the return of this certificate properly endorsed." By his will Chris made two specific bequests of $100 each, gave all the rest of his property to his wife for life or so long as she remained unmarried, and upon her death or re-marriage gave the remainder to his son, Fred, whom he named executor. After the will had been admitted to record and Fred appointed executor, Fred and the attorney representing him advised Maria that she had not been legally married to Chris because her divorce from her first husband was not legal. She produced her marriage certificate to show that she had been married to Chris, but was told that that did not make her marriage legal because there was no record of her being divorced at the time the marriage ceremony was performed. Being advised by Fred and his attorney that she was not entitled to any of the property left by Chris she sought independent legal advice.

The attorney employed by her made an effort to find the record of the divorce proceedings, but because she pronounced the name "Zech" as though it began with an "S," he confined his search of the index to the letter "S" and did not find the record. He was told by Fred and his attorney that the town property belonged to Chris, and he did not examine the deed. Believing the representations made to him by Fred and his attorney, Maria's attorney advised her that it was best for her to accept a settlement. After consultation an agreement was prepared which gave to Maria the use of the town property for life and one-half of the personal property after the payment of debts and expenses. Thereafter she learned that the deed conveyed the town property to Chris and her as joint tenants, and she was advised that she was entitled, as survivor, to the money represented by the certificates of deposit. Thereupon she filed her bill, setting up that the agreement was made under a misapprehension of the facts and as a result of the false representations made by Fred, and asking that it be set aside and her interest in the estate declared.

It is admitted by the parties, and the evidence shows, that when the attorneys advised Maria that she was not legally divorced from Zech they were honestly mistaken. Because of her inability to speak the English language plainly, both attorneys had searched for her name in the records under the letter "S." In order to grant relief, however, it is not necessary to find that the false representation which induced Maria to execute the agreement was made with fraudulent intent. (*Champlin* v. *Laylin*, 18 Wend. 407, 31 Am. Dec. 382; 2 Pomeroy's Eq. Jur. sec. 847.) She signed the agreement which gave to Fred property to which he was not entitled, under a misrepresentation which, however innocently made, operated as a fraud on her. It is against conscience for those who led her into the error to insist on the fruits of the contract. The evidence in this record shows that a fiduciary relation existed between Fred

and Maria because of her dependence on him in the transaction of business, (*Hensan* v. *Cooksey,* 237 Ill. 620,) and in so far as the agreement had to do with the administration of the estate of Chris Engelbrecht, the relation of Fred as executor and Maria as a beneficiary of the estate was that of trustee and *cestui que trust.* (*Lipscomb* v. *Allen,* 298 Ill. 537; *Parks* v. *Brooks,* 188 Mich. 645, 155 N. W. 450.) Where, as in this case, there is a marked disparity in the position and intelligence of the parties, so that they have not dealt on equal terms, and where the party obtaining the property is the dominant party and has taken advantage of the confidence reposed in him by the party losing the property, equity has granted relief notwithstanding the mistake under which the agreement was made was one of law. (*Sands* v. *Sands,* 112 Ill. 225; *Stephens* v. *Collison,* 249 id. 225; *Jordan* v. *Stevens,* 51 Me. 78, 81 Am. Dec. 556; *Haviland* v. *Willets,* 141 N. Y. 35, 35 N. E. 958; *Wheeler* v. *Smith,* 9 How. 55, 14 L. ed. 44.) There can be no question on this record that the agreement by which Fred obtained property belonging to Maria was obtained by Fred's representation to her that she was not entitled to a share of the property of Chris because she had not been legally married to him. After the misrepresentation was made to her she undertook to establish the legality of her marriage, but was unsuccessful because of her inability to express herself clearly to her attorney and because of her ignorance of her legal rights. While the courts favor a compromise of controversies arising among members of the same family, such compromises are often set aside where they are accompanied by misrepresentation and imposition by those in whom confidence is reposed and who have unconscionably benefited by the settlement. (2 Pomeroy's Eq. Jur. sec. 850.) Under the facts in this case the agreement in question should be set aside.

Having concluded that the settlement is not binding upon appellant two other questions arise. The first is the

effect of the deed to Chris and Maria "as joint tenants," and the second is the effect to be given the words "payable to the order of either," appearing in the certificates of deposit.

Prior to 1821 a conveyance to two or more persons created *prima facie* a joint tenancy. In that year a statute was passed which abolished the common law estate of joint tenancy and prohibited its creation by will, deed or contract. In 1827 the rule was relaxed in so far as it applied to real property and the present section 1 of the act in relation to joint rights and obligations was passed. This act provides "that no estate in joint tenancy in any lands, tenements or hereditaments shall be held or claimed under any grant, devise or conveyance whatsoever heretofore or hereafter made, other than to executors and trustees unless the premises therein mentioned shall expressly be thereby declared to pass not in tenancy in common but in joint tenancy." The exact words of the statute, "not in tenancy in common but in joint tenancy," are clearly sufficient for the creation of a joint tenancy. But it is not necessary to use the exact words of the statute in order to create a joint tenancy. (*Slater* v. *Gruger*, 165 Ill. 329; *Coudert* v. *Earl*, 45 N. J. Eq. 654, 18 Atl. 220.) It is sufficient if the language employed be such as to clearly and explicitly show that the premises are to pass in joint tenancy. (*Mustain* v. *Gardner*, 203 Ill. 284.) A conveyance to a husband and wife "not as tenants in common but as joint tenants" has been held to create in the grantees an estate in joint tenancy with the right of survivorship. (*Mette* v. *Feltgen*, 148 Ill. 357.) Where the conveyance is made to two or more persons "as joint tenants," the use of the words "and not as tenants in common" adds nothing. If the estate is held by several persons as joint tenants, it is not and cannot be held by them at the same time as tenants in common. It follows that to say of an estate that it is held by several persons as joint tenants is to say, in effect, that it is not held by them as tenants in common. When Fred and his wife made

the deed to Chris and Maria, conveying the city property to them "as joint tenants," they expressed the intention to create in the grantees an estate in joint tenancy, with the right of survivorship, as clearly as they would have expressed the intention if they had added the words "and not as tenants in common." It is established by the decisions of this court that this deed conforms to the requirements of the statute and that the grantees took an estate in joint tenancy.

When Chris made the deposits of money in the names of himself and his wife and received the certificates of deposit payable to either of them he did not by this transaction give the money so deposited to his wife. There is nothing in the certificates that evidences any other intent than that the money was subject to withdrawal by either party for the convenience of the parties. At the time these deposits were made no contract was entered into which directed the bank to pay to the survivor of them whatever remained in the fund at the death of either party, and so the certificates do not come within the decisions of this court in *Reder* v. *Reder,* 312 Ill. 209, and *Illinois Trust and Savings Bank* v. *VanVlack,* 310 id. 185. Where a promissory note or certificate of deposit is made payable to two or more persons without designating the proportion each is to take, the law presumes that they are to take equal shares. There is no evidence in the record now before us which justifies a holding that any other intention existed in the minds of the payees of these certificates when the deposits were made.

The decree is reversed and the cause is remanded to the circuit court of McLean county for further proceedings consistent with the views herein expressed.

*Reversed and remanded.*