No. 14,010.

Chain O'Mines, Incorporated et al. *v.* Williamson et al.
(72 P. [2d] 265)

Decided September 27, 1937.

Mr. HERBERT M. MUNROE, Mr. LEROY J. WILLIAMS, for plaintiffs in error.

Mr. HARRY W. ROBINSON, pro se.

Mr. MILTON E. BLAKE, Mr. MILTON J. BLAKE, Messrs. PERSHING, NYE, BOSWORTH & DICK, Mr. SAMUEL S. SHERMAN, JR., for defendants in error.

*In Department.*

MR. JUSTICE KNOUS delivered the opinion of the court.

ON May 29, 1930, the plaintiff in error Chain O'Mines, Incorporated, at that time the owner of a considerable

number of mining claims, entered into an agreement with the defendant in error Harry M. Williamson, whereby the Chain O'Mines leased several claims in Gilpin county to Williamson for a term commencing May 29, 1930, and ending February 26, 1935, with the option to him to purchase said property at any time during the term of the lease for $10,000. The royalties theretofore paid, upon the exercise of the option, were to apply on the purchase price. The agreement was recorded on September 18, 1931. Subsequently a large number of creditors of the Chain O'Mines, Incorporated, including all of the defendants in error except Williamson, and West as trustee, obtained judgments against the Chain O'Mines and recorded transcripts thereof in Gilpin county. The property covered by the lease and option, together with other property of the Chain O'Mines, was levied upon under executions and judgments in favor of the California Hidden Treasure Mines Company, Vanadium Steel Corporation, The Babcock & Wilcox Tube Company, and E. I. Du Pont de Nemours and Company, and on October 20, 1934, the properties were sold pursuant to these executions and levies and purchased by the defendant in error I. A. West, as trustee. Sheriff's deed issued on April 23, 1935. On February 20, 1935, within the term of lease and during the pendency of the redemption period under the execution sale, Harry M. Williamson elected to exercise his option and gave notice in writing to that effect and on the following day deposited with the clerk of the district court of Gilpin county the unpaid portion of the purchase price amounting to $6,900 as a tender, and instituted this proceeding in the nature of an action for specific performance of the option contract and to quiet title to the property, which proceeding, however, in effect had for its purpose a determination of the respective rights of the Chain O'Mines and the judgment creditor parties to the balance of the purchase price.

The trial court ordered the defendant in error I. A. West, as trustee, to convey the optioned property to Wil-

liamson and directed the payment of the unpaid portion of the purchase price in the hands of the clerk of the court to said I. A. West, as trustee.

 Distinct and separate questions, relating to the diverse interests of two groups of plaintiffs in error are raised by the assignments here. The first group, Chain O'Mines, Incorporated (a Nevada corporation), and Chain O'Mines, Incorporated (a Colorado corporation), and Herbert M. Munroe, as trustee, under a deed of trust dated June 15, 1932, given by Chain O'Mines, Incorporated, to secure the payment of certain bonds, contend that by virtue of the contract and subsequent exercise of the option to purchase, the mining property described therein, was converted into personalty as of the date of the contract, and that the levies of the executions on the real property and its subsequent sale and conveyance thereunder were subject to this lease and option and were defeated upon its exercise and that the purchase price, not having been subjected to the executions, remains the property of the vendor, Chain O'Mines, Incorporated. This contention is based upon the fundamental equity principle that equity regards that as done which ought to be done. The fiction of equitable conversion was originally applied in early English jurisprudence in controversies between the personal representatives and the heirs or devisees of a deceasd person as to whether certain property of the decedent should be treated as realty or personalty in its devolution. Where the involved instrument sufficiently expressed an intention by a testator or grantor that his real estate be turned into personal property or his personal property be turned into real, courts of equity, without reference to the then physical status of the property, treated the intention of the testator or grantor as controlling. As the doctrine was primarily conceived and carried into effect by the earlier decisions here and in England, it was generally held that the conversion took place in wills from the date of the death of the testator, and in other

instruments inter vivos as of the date of their execution. In so far as these cases dealt with contracts for the sale of land, the contracts involved, with few exceptions, were unconditional agreements for the purchase and sale as distinguished from option agreements giving the right to purchase without imposing any legal obligations so to do. Where the doctrine of equitable conversion was applied in unconditional sales contracts, the conversion generally has been held to be effective as of the date of the contract. However this may be, and notwithstanding the pronouncements of a number of courts and the statements of some text writers seemingly to the contrary, we do not believe in the case of option contracts, such as the one here under consideration, that any conversion takes place, even if the doctrine is at all applicable, until the option is exercised by the party having the right of election. The modern and correct rule, in our opinion, relating to this subject is found in 6 R. C. L., p. 1089, par. 21, where it is said: "* * * When an option to purchase land is given, according to the doctrine most in accord with authority and principle the conversion is deemed to have taken place at the time the option is declared and not from the date of the contract giving the option. The maxim underlying the doctrine of equitable conversion rests on a duty to do something, and until the option is exercised there is no duty and it cannot be known whether there ever will be a duty. Hence, conversion should not be presumed as of a date earlier than the date when the duty becomes certain, as that would be unreasonable and the same in effect as if the duty existed from the outset. The person granting the option must in reason be presumed to intend that the discharge of the duty shall take effect for all purposes only from the date when by his direction the duty becomes absolute through the occurrence of an uncertain event. To hold otherwise would carry a rule, unknown to the common law and created by courts of equity because founded on reason, far beyond the bounds of rea-

son. As intention is involved, or presumed intention which must be reasonable, the manifest inconvenience of holding otherwise cannot be ignored.''

As has already been pointed out, when Williamson's election under the option was made the Chain O'Mines' title had been divested by the sheriff's sale, subject to its right to redeem, which was never exercised, and hence, even upon the equitable conversion theory, it had no right, as against the sheriff's vendee, to the balance of the purchase money paid under the option.

█ Furthermore, it has generally been held in the United States, and we believe correctly, that a judgment lien accruing against a vendor after the making of the contract of sale, but before making delivery of the deed, extends to all of vendor's interest remaining in the land and entitles the purchaser at the sheriff's sale to all sums still to be paid by the vendee, and that the balance due on the purchase price is reached by an execution against the land. 34 C. J., p. 598, §916. 2 Freeman on Judgments (4th ed.), §364. Any other rule would lead to great injustice and confusion in that if the interest of the vendor was not subject to the lien and judgment, all that would be necessary in order to put land where it would be free from judgment liens would be for the owner to enter into a contract for its sale. We must, therefore, hold that the contentions of the plaintiffs in error just discussed are untenable.

█ The plaintiffs in error Ziege and Robinson, who, as judgment creditors of the Chain O'Mines, had filed transcripts of the judgment which were not included in the execution under which the sale was had, contend that the payment of the balance due under the Williamson option, during the redemption period and at a time when the defendant in error I. A. West, as trustee, merely held a certificate of purchase and the subsequent acceptance of such sum by him changed the character of his title, waived his right to enforce a forfeiture of the equity of redemption under the statute, converted his purchase

at the sheriff's sale into a mere lien on the land, and that the judgment debtor and judgment creditors still have the right to redeem by paying the balance of the purchase money notwithstanding the legal period of redemption has expired and the sheriff's deed issued. It appears from the record that the balance due on the option was deposited with the clerk and not paid to West until *after* the expiration of the statutory period of redemption. As has been pointed out, no redemption was ever made by the Chain O'Mines or its judgment creditors. Had redemption been attempted or made before the statutory period expired, it is obvious that the redeeming judgment debtor or creditors would be entitled to have the deposit in the hands of the clerk considered in determining the required amount to redeem, or, having paid the full amount of the judgment, would be entitled, as their interests required, to the payment of this money in the clerk's hands to them. Having failed in these particulars it seems evident any further period of redemption is precluded them.

Furthermore, the payment to the sheriff's vendee of the balance due on the Williamson option, even if made before the statutory exemption period expired, could not have the effect of a partial redemption of the mining claims covered thereby where such claims were only a part of the property sold en masse at the sheriff's sale. 35 C. S. A., c. 93, §64, C. L., 1921, §5954. Property sold in an execution sale en masse, if redeemed at all, must be redeemed en masse. *Walker v. Wallace,* 79 Colo. 380, 246 Pac. 553.

To support their proposition that the acceptance of the money by West, as trustee, constituted a waiver of his right to enforce a forfeiture of the equity of redemption, Ziege and Robinson cite the cases of *Southard v. Pope's Executor,* 48 Ky. (9 B. Monroe [1848]) 261; *Ott v. Rape,* 24 Wis. 336, and *Murphy v. Teutsch,* 22 N. D. 102, 132 N. W. 435. In all three of these cases, during the period of redemption, the holder of the cer-

tificate of purchase accepted payments of money *from the judgment debtor.* The cases were decided upon the theory that equity would not permit the purchaser to accept partial payment from the judgment debtor during the redemption period and then exact a full forfeiture upon his failure to pay the balance within the period. Obviously this principle cannot be applied to the case at bar where the payment received was not made by the judgment debtor, but was realized from the sale of a portion of real property included in the execution sale, and the sheriff's vendee was required to convey the indicated property to the party paying the money as a prerequisite to securing it.

It is, therefore, our conclusion that the contention of the plaintiffs in error Ziege and Robinson, is without merit and that the trial court correctly ruled on this issue. The judgment is accordingly affirmed in its entirety.

Mr. Chief Justice Burke, Mr. Justice Bouck and Mr. Justice Young concur.