No. 20,132.

ROSE M. KONECNY v. LOUIS E. VON GUNTEN, AS ADMINISTRATOR OF THE ESTATE OF ADOLPH F. KONECNY, DECEASED.

(379 P. [2d] 158)

Decided January 28, 1963.    Rehearing denied March 11, 1963.

Messrs. BARTHOLIC & BARTHOLIC, for plaintiff in error.

Messrs. YEGGE, HALL & SHULENBURG, for defendant in error.

*En Banc.*

MR. JUSTICE MCWILLIAMS delivered the opinion of the Court.

ADOLPH F. KONECNY, hereinafter referred to as the deceased, or Adolph, died intestate on December 11, 1957, his wife Rose M. Konecny, hereinafter referred to as the defendant or Rose, and several children of a prior marriage, surviving.

On August 26, 1959, Louis E. von Gunten, as administrator of the estate of Adolph, instituted the instant

action against Rose, alleging generally that she had in her possession certain assets and properties which property belonged to Adolph's estate, and sought an accounting and partition, if necessary. By answer Rose denied that she held any assets or properties belonging to Adolph's estate.

A comprehensive pre-trial order, approved by both parties as to form and content, established the following facts:

1. Through their joint and mutual efforts, over a period of more than forty years, the deceased and the defendant accumulated many properties of value.

2. Adolph and Rose prior to 1953 operated a "greenhouse business equipped with tools, vehicles, supplies and growing plants, together with land on which the business was operated";

3. As of February 1, 1953, title to the greenhouse realty was in Adolph and Rose as tenants in common, and on that date they "sold" their greenhouse business, i. e. the land and business, by an Agreement for Sale and Purchase of Property, to Betty Jean Konecny and Donald Konecny (Donald was a son of Rose by a prior marriage, and though never legally adopted by Adolph, he nevertheless used the family name Konecny);

4. By this agreement Donald Konecny and Betty Jean Konecny promised to pay Adolph and Rose over a period of years the sum of $75,000;

5. On March 4, 1953, the greenhouse realty was transferred by Adolph and Rose to Adolph and Rose as "joint tenants and not as tenants in common";

6. That as of the date of Adolph's death Donald and Betty Jean "were indebted" to Adolph and Rose under said contract in the amount of $48,400, plus accrued interest of $1,056.66, and that Rose has retained all subsequent payments made on the balance of the indebtedness;

7. That some eighteen promissory notes payable to Adolph or Rose when executed and "so payable at the

time of death of Adolph [and] . . . were all in the possession of Adolph and Rose at the time of death of Adolph"; and

8. The total "amount due" on these eighteen notes as of Adolph's death was $165,000, and that Rose has retained all payments subsequent to Adolph's death.

Upon trial neither party offered any evidence and each chose to rely upon the facts stipulated and agreed to in the pre-trial conference order, although counsel for Rose by way of an opening statement did expand a bit on the matter referred to in point 1, supra, by stating and stipulating that the eighteen notes as well as the greenhouse property were "all accumulated through the joint and mutual efforts of Mr. and Mrs. Konecny" and without "assistance of any of the children." Counsel for Rose also stated that all of the eighteen notes as of the date of trial had been paid in full, except for three, although the unpaid notes were not further identified.

The trial court held that "one-half of the notes in question and one-half of the balance due on the contract of purchase should be delivered to the plaintiff in this matter" and forthwith entered judgment for von Gunten, the administrator of the estate of Adolph, and against Rose for $107,228.33 with interest thereon from the date of Adolph's death. This figure of $107,228.33 was apparently arrived at by totaling the amounts due on the eighteen notes as of the date of Adolph's death ($165,000) and the amount due on the agreement to purchase the greenhouse as of that same date ($48,400 plus $1,056.66 interest), and then dividing by two. Motion for new trial was dispensed with by appropriate order of court, and by the present writ of error Rose seeks reversal of the judgment.

Rose contends that the trial court erred in entering judgment in favor of the administrator for three reasons:

1. There was no evidence that the deceased had *any* interest, be it in the notes or the real property, which would pass to the administrator of his estate;

2. The promissory notes here in question were *not* held by deceased and his wife as tenants in common; and

3. There was no equitable conversion of the real property (the greenhouse) into personalty when the deceased and his wife entered into a contract for the sale of the same, and this contract of sale followed the title to the realty which at the date of Adolph's death was held by him and his wife as joint tenants with right of survivorship.

It is the position of the administrator that immediately prior to his death, Adolph definitely did have an interest in the eighteen notes, in fact the identical interest as that of his wife; that this interest was not that of a joint tenant with right of survivorship, but of a tenant in common, and on Adolph's death passed to the administrator of his estate.

Concerning the greenhouse property, the administrator contends that when the deceased and Rose entered into a contract for its sale, there was an equitable conversion of real property into personalty, and that this personalty, i.e. a chose in action created by the contract of sale, was by its own terms clearly held by decedent and Rose as tenants in common and not as joint tenants with the right of survivorship. Hence, Adolph at the date of his death had an undivided one-half interest in this agreement to sell.

The first question to be resolved is whether Adolph had *any* interest in the eighteen promissory notes, which on his death would pass to the administrator of his estate. The trial court held that he did have interest therein, and was correct in so holding.

The following stipulated facts justify such conclusion:

1. Adolph and Rose were each designated in all eighteen notes as alternative payees, neither enjoying preferential status over the other;

2. The eighteen notes were "all accumulated through the joint and mutual efforts" of Adolph and Rose; and

3. All eighteen notes were in the "joint possession of Adolph and Rose as of the time of Adolph's death."

These stipulated facts establish prima facie that both Adolph and Rose had an interest in the notes involved and, there being no evidence to the contrary, are controlling.

Having determined that Adolph did have an interest in the notes, the question then is the nature of his interest. Did Adolph and Rose own the notes as joint tenants with right of survivorship, or as tenants in common? Under the circumstances shown they were clearly owned by Adolph and Rose as tenants in common. Even Rose does not seriously contend that they were owned by herself and Adolph as joint tenants with right of survivorship, the main thrust of her argument being that Adolph had absolutely *no* interest therein which upon his death would pass to his personal representative.

Under modern practice and statutory rules, to create a joint tenancy with survivorship rights, there must be specific language manifesting such intent, and where the instrument is silent or ambiguous as to the nature of the joint estate created, it will be construed as creating a tenancy in common and not a joint tenancy. See 14 Am. Jur. page 84 and 48 C.J.S. page 918.

So, in *Estate of Kwatkowski, State of Colorado v. Reindl, Executor,* 94 Colo. 222, 29 P. (2d) 639, where the testator in his will devised and bequeathed to A and B, "jointly and severally all of my real and personal property," consisting of "lands, notes, credits, moneys or other property," it was held the language used created a tenancy in common, not a joint tenancy with rights of survivorship.

In *Englebrecht v. Engelbrecht,* 323 Ill. 208, 153 N.E. 827, six certificates of deposit were made payable to Chris and Maria, five containing the additional statement that each was "payable to the order of either on return of the certificate properly endorsed" and the sixth was made "payable to the order of self or wife . . ." It was

382

there stated: "Where a promissory note or certificate of deposit is made payable to two or more persons without designating the proportion each is to take, the law presumes that they are to take equal shares. There is no evidence in the record now before us which justifies a holding that any other intention existed in the minds of the payees of these certificates when the deposits were made."

The eighteen notes in question were all made payable to Adolph *or* Rose, and Rose argues that great significance should attach to the use of the word "or," in opposition to the word "and." She concedes that if the notes were payable to "Adolph and Rose" a tenancy in common would result, but continues by urging that since the word "or" was used, Adolph has no interest in the notes. This contention is without merit.

In *Estate of John H. Schroeder,* 75 Ohio Law Abst. 555, 144 N.E. (2d) 512, a certificate of deposit in the name John H. or Nettie Schroeder was under consideration, and in determining the ownership of said certificate the court said: "As to the first stipulation of fact, I feel that the owners of these certificates are John H. and Nettie Schroeder, the persons named on the face of such certificates. As there are no rights of survivorship contained on the certificates, then it is the opinion of this Court that the above named persons owned them as tenants in common with each owning an undivided one-half interest therein. Thus, only one-half goes into the estate for probate purposes and thus becomes taxable. The other one-half belongs to the survivor, Nettie Schroeder, and is not taxable as a succession. . . . *Further, whether the conjunctive used is 'or' or 'and' is academic as either one shows a joint interest."* (Emphasis supplied.)

Similarly, in *McClain v. Holder,* Tex. App. 279 S.W. (2d) 105, certain corporate bonds were issued in the name of "Dr. William Z. McClain or Mrs. Lee F. McClain (wife)," the bonds having been acquired through their joint efforts and being jointly possessed by the alterna-

tive payees at the time of Dr. McClain's death. In connection therewith the Texas Court of Appeals said:

"By virtue of the terms of the certificates and of the joint possession thereof, and the fact that they were acquired by the joint industry of the parties, we must hold that the Doctor and his wife owned the bonds as tenants in common . . .

"We have concluded that the omission of the bonds to specify such an unusual provision as that they should pass to the survivor is not one that can be supplied by parol where there is nothing contained in the bonds to suggest survivorship except that, in the event of death of one 'or' payee there could remain only the other 'or' payee to whom payment could be made in person. Upon the death of either 'or' payee, the law supplies his heirs to take his place. . . . "

For all these reasons we conclude that Adolph and Rose held eighteen notes as tenants in common, each possessing an undivided one-half interest therein, and that upon his death Adolph's interest passed to his representative.

The trial court further held that von Gunten, as administrator of Adolph's estate, was also entitled to "one-half of the balance due on the contract of purchase" of the greenhouse property, and Rose contends that this too was erroneous. In our view, however, this finding under the admitted facts was proper and correct.

As of February 1, 1953, Adolph and Rose owned the greenhouse realty as tenants in common, and on that date they entered into an Agreement for Sale and Purchase of Property with Donald C. Konecny and his wife, Betty Jean. By this contract Adolph and Rose agreed to sell, and Donald and Betty Jean agreed to purchase, the greenhouse property, both real and personal, for $75,000, with $100 as a down payment and the balance to be paid at the rate of no less than three thousand dollars per year. The agreement also provided that when Donald and Betty Jean had paid $37,500 on the total purchase price,

Adolph and Rose would then convey the greenhouse realty to them by warranty deed, in fee simple, Donald and Betty Jean "giving back a first deed of trust" thereon. Another provision was that "this contract is not assignable." The concluding paragraph in the agreement stated that "all the covenants and agreements herein contained shall extend to and be binding upon . . . the administrators . . . of the respective parties."

In the agreement the payees were simply designated as Adolph and Rose, with no descriptive language whatsoever to even suggest that their interest in the contract was held in joint tenancy with a right of survivorship. Most certainly, then, as of the date of the agreement the right of Adolph and Rose to receive payments under this contract was held by them as tenants in common, each having an undivided one-half interest therein.

Even Rose concedes such to be true, but goes on to point out that on March 4, 1953, Adolph and Rose, as tenants in common, conveyed to themselves; as joint tenants with right of survivorship, the greenhouse realty. This fact, in and of itself, according to Rose, converted the interest of Adolph and Rose in the contract from one held by them as tenants in common to one in joint tenancy. With this contention we do not agree.

Under the agreement Adolph and Rose contracted to sell not just the greenhouse realty, but greenhouse personalty, as well, i.e. merchandise, equipment and the like. What portion of the total purchase price of $75,000 represented the value of the realty, or the personalty, is not known, the parties simply agreeing that the greenhouse property, i.e. both realty and personality, would sell for $75,000. All agree that Adolph and Rose were designated and described in the agreement in such manner as to create a tenancy in common, and there never has been any subsequent assignment, as such, by Adolph and Rose of their interest in this agreement to themselves as joint tenants with right of survivorship. Indeed, it is doubtful that the respective interests created by the contract could

be assigned, in view of the specific prohibition against assignment.

But it is nonetheless urged that the warranty deed of March 4, 1953, constituted an assignment. There is no language in this warranty deed to indicate that Adolph and Rose intended to do anything more than to place the title to the greenhouse realty in themselves as joint tenants, and there is nothing to indicate that by the execution and delivery of this deed they desired or intended that their right to receive the money payments provided for by the agreement was also to be jointly owned with a right of survivorship.

█ Accordingly, we now hold that the interest created by the Agreement for Sale and Purchase of Property is personal property—a chose in action, and that the language of the agreement created an interest held by Adolph and Rose as tenants in common. Further, we conclude that the subsequent execution and delivery of the warranty deed, whereby the greenhouse realty was conveyed to Adolph and Rose as joint tenants, did not in and of itself convert their interest in the contract to one in joint tenancy with a right of survivorship, there being no language in the deed to indicate any such intent.

This conclusion is supported by the doctrine of equitable conversion. This doctrine admittedly is not universally followed and has been subjected to some criticism. However, in *Eagan v. Mahoney,* 24 C.A. 285, 134 Pac. 156 our Court of Appeals recognized the doctrine of equitable conversion but refused to invoke it in the case at hand, because to so do would defeat rather than effectuate, the intention of the trustor.

In *Chain O'Mines Incorporated v. Williamson,* 101 Colo. 231, 72 P. (2d) 265 this Court again recognized the doctrine and held that where the owner of realty leases his land and also grants the lessee an option to purchase the same, there is in no event an equitable conversion until the option is exercised, though still recognizing that in the case of an unconditional sales contract the con-

version has generally been held to be effective as of the date of the contract.

■ And finally in *Hale v. Wheeler,* 108 Colo. 119, 114 P. (2d) 566 it was said:

". . . This trustee stands, and we think unassailably, upon the doctrine of equitable conversion as recently recognized and applied by this court. *Chain O'Mines v. Williamson,* 101 Colo. 231, 72 P. (2d) 265."

Under this doctrine of equitable conversion a contract for the sale and purchase of real property works a conversion of the vendor's interest into personalty, and of the vendee's interest into realty. Applied to the instant case, the execution on February 1, 1953, of the Agreement for Sale and Purchase of Property converted the interest of Adolph and Rose in the greenhouse realty, into personalty — personalty which by the terms of the agreement was held as tenants in common. Their interest thereafter at all times being personalty — a chose in action, and not realty, the subsequent conveyance of the naked legal title to the realty to themselves as joint tenants, did not in and of itself change or alter the nature of their respective interests in the contract of sale.

See, for example, *In Re Bakers Estate,* 247 Iowa 1380, 78 N.W. (2d) 863 where a husband and wife owning realty as joint tenants entered into a contract for the sale thereof. The husband subsequently died, and his administrator claimed the right to one-half of the proceeds of the contract, the wife in turn claiming that she as the surviving joint tenant was entitled to all of the unpaid moneys. Applying the doctrine of equitable conversion the Iowa court held that the contract to sell terminated the joint tenancy and that the husband and wife thereafter each had an undivided one-half interest in the contract of sale.

Although the trial court was correct in its determination that Adolph had an undivided one-half interest in the contract for sale of the greenhouse property, as well

as the eighteen notes, it did err in entering a money judgment against Rose for $107,228.33. As was observed, supra, this figure apparently represented one-half of the sum due on the eighteen notes and the balance and unpaid interest due on the contract of sale, all as of the date of Adolph's death. This determination would have been proper *if* subsequent to Adolph's death and prior to trial Rose had received the entire balance due on all eighteen notes, and if the balance due on the contract for sale of the greenhouse had also been paid in full. Such, however, was not the case. It was stipulated that Rose had been paid in full for fifteen of the eighteen notes, but that three still remained unpaid. Which three and the amounts still due on each is not shown. As to the sale of the greenhouse, though Rose had received some payments in connection therewith subsequent to Adolph's death, there remained a substantial unpaid balance. The net effect of the judgment, as entered, was to make Rose not only account for one-half of the money which she in fact had received on the notes and contract for sale of the greenhouse, subsequent to Adolph's death and up to the date of trial, but also for one-half of the balance due and owing on these notes and contract which, as of the date of trial, remained unpaid.

The judgment so far as it determines the liability of Rose to account to the estate is affirmed. However, in respect to the amount of the judgment, it is reversed and the cause remanded for further proceedings consistent with the views expressed herein. Specifically, von Gunten, as administrator of Adolph's estate, is entitled to one-half of all sums which have been collected by Rose subsequent to Adolph's death on the eighteen notes and the contract for sale of the greenhouse properties, and to one-half of all sums collected therefrom *in futuro*.

MR. JUSTICE PRINGLE not participating.