**BRUSH GROCERY KART, INC.,**
a Colorado corporation,
Plaintiff–Appellant,

v.

**SURE FINE MARKET, INC.,** a Colorado corporation, Defendant–Appellee.

**No. 00CA0711.**

Colorado Court of Appeals,
Div. III.

March 1, 2001.

Certiorari Granted Sept. 10, 2001.

** Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S.2000.

Edward L. Zorn, Fort Morgan, CO, for Plaintiff–Appellant.

Anderson and Chapin, P.C., Robert B. Chapin, Brush, CO, for Defendant–Appellee.

Opinion by Judge NIETO.

Plaintiff, Brush Grocery Kart, Inc. (Grocery Kart), appeals that part of a judgment determining that the risk of loss from damage to real property that occurred after plaintiff exercised an option to purchase the property and before transfer of legal title fell on plaintiff. We affirm.

Grocery Kart leased real property from defendant, Sure Fine Market, Inc. (Sure Fine). A provision of the lease granted Grocery Kart an option to purchase the property. The parties agree that Grocery Kart exercised the option according to the terms of the agreement. The parties also agree that the option agreement was a binding contract.

When the parties could not agree on a purchase price in the manner provided in their agreement, Grocery Kart filed this action seeking, among other things, the appointment of a master to determine the purchase price pursuant to the contract. While the action was pending, the lease expired, and Grocery Kart vacated Sure Fine's premises. Grocery Kart then allowed the insurance on the property to lapse and sent notice of this to Sure Fine. The parties agree that the agreement contained no provision requiring either party to insure the premises, and that the property was left uninsured. After Grocery Kart vacated the property, but before the transfer of legal title, a hail storm caused substantial damage to the property.

The parties then raised the issue of the proper allocation of this loss, and they tried that issue in a trial to the court. The trial court held that the agreement did not make provision for a duty to insure the property, and therefore neither party had a duty to obtain insurance. The court then allocated the risk of loss to Grocery Kart by applying the doctrine of equitable conversion. This appeal followed.

Grocery Kart contends that the risk of loss should fall upon Sure Fine because, at the time of loss, Grocery Kart did not have possession of the property, and Sure Fine was the legal owner of the property. We are not persuaded.

■ In the absence of a duty to provide insurance in a contract for the sale of real estate, no such duty will be implied for either the seller or the purchaser. *Wiley v. Lininger,* 119 Colo. 497, 204 P.2d 1083 (1949).

■ Colorado has long recognized the doctrine of equitable conversion. *See Dwyer v. District Court,* 188 Colo. 41, 532 P.2d 725 (1975); *Konecny v. von Gunten,* 151 Colo. 376, 379 P.2d 158 (1963); *Chain O'Mines, Inc. v. Williamson,* 101 Colo. 231, 72 P.2d 265 (1937). The doctrine of equitable conversion is based on the equitable principle "that equity regards that as done which ought to be done." *Chain O'Mines, Inc. v. Williamson, supra,* 101 Colo. at 234, 72 P.2d at 266. The doctrine provides that at the time parties have entered into a binding contract for the sale of real estate, equitable title to the real estate vests in the buyer, and the seller's interest is converted into personal property, *i.e.,* a right to obtain payment of the purchase price. However, in an option contract, the equitable conversion occurs when the option is exercised, not when the contract becomes effective. This is so because there is no duty to buy or sell until the option is exercised. After the option is exercised, the contract has the same effect as an agreement to buy and sell property. *Chain O'Mines, Inc. v. Williamson, supra.*

■ *Wiley v. Lininger, supra,* addressed the allocation of the risk of loss in a contract for the sale of land. There, the buyer occupied the property under an installment land contract that had no provision for allocating the risk of loss occurring between the time the contract became effective and the time legal title was transferred to the buyer. The supreme court held:

> While there is some authority to the contrary, the majority rule seems to be that the vendee under a contract for the sale of land, being regarded as the equitable owner, assumes the risk of destruction of or

injury to the property where he is in possession, and the destruction or loss involved is not proximately caused by the negligence of the vendor. (See, annotation at 101 A.L.R., page 1241.) We adopt this majority rule.

*Wiley v. Lininger, supra,* 119 Colo. at 502, 204 P.2d at 1086.

Grocery Kart argues that the holding in *Wiley* is distinguishable because there the buyer had possession of the property. While *Wiley* is factually different on this point, the supreme court did not indicate that possession was a controlling factor in its holding. As support for its holding, the *Wiley* opinion cites Annot., 101 A.L.R. 1241 (1936), as authority for the majority rule it adopted. In that annotation, the majority rule is stated without reference to possession as a factor.

The allocation of this risk of loss in circumstances where the buyer is not in possession has not previously been addressed by a Colorado appellate court. Most jurisdictions that have addressed the issue have held, based on the doctrine of equitable conversion, that the purchaser must bear the risk. Those jurisdictions

> conform to the "equitable conversion" principle that the purchaser under an executory contract possesses, in fact and in substance, the real ownership of the land and, therefore, must also, in the absence of an agreement to the contrary, bear the risk of loss for a casualty damaging the premises between the time the contract for sale is executed and the time title is transferred.

Annot., 85 A.L.R.4th 233, 238 (1991) (citations omitted).

The theory underlying the doctrine of equitable conversion does not support a conclusion that possession is a controlling factor. The doctrine is based on the theory that the contract creates a duty in the seller to convey the property to the buyer. *Chain O'Mines, Inc. v. Williamson, supra.* Under this theory, the buyer becomes the equitable owner because he or she has acquired an enforceable right to obtain legal title to the property. Therefore, because the risk of loss is an attribute of ownership, the buyer must

assume the risk of loss. This theory is not affected by possession of the property.

We acknowledge that some courts have considered possession to be a factor in allocating this risk, but this is the minority rule. *See* Annot., 85 A.L.R.4th 233. In view of the supreme court's adoption of the majority rule in *Wiley v. Lininger, supra*, we do not find these cases persuasive.

The parties to an agreement to sell real estate can control the allocation of the risk in this interim period by providing for it in their contract. Also, the buyer and seller both have an insurable interest in the property, and thus either or both may protect themselves from the loss by obtaining insurance. *Wiley v. Lininger, supra*. Since the parties to the contract can exercise control over this issue, we conclude that a bright line rule allocating the risk of loss to the buyer without regard to possession will best inform the parties of their rights and obligations under a contract for sale of land. Armed with this clear rule, the parties may accept the risk, assign the risk, or protect themselves as they see fit.

■ Grocery Kart also contends that § 38–30–167, C.R.S.2000, places the risk of loss on the seller. That statute provides:

If it is impossible for a vendor of real property to convey a portion of the real property he contracted to convey, the vendee has a right to obtain a conveyance of that portion which it is possible to convey and a right to obtain damages or other equitable relief concerning the portion which it is impossible to convey.

Grocery Kart argues that the building is part of the real property, and therefore, since it was damaged, it was impossible for Sure Fine to convey a portion of the real property. Therefore, Grocery Kart asserts that it had the right to conveyance of the land and the undamaged part of the building, and the right to obtain damages for the damaged portion that Sure Fine could not convey. We do not agree.

Grocery Kart has not cited any case that has construed this statute to allocate a casualty loss. Our own research has not revealed any.

Statutes are to be construed according to their plain and obvious meaning, and they should not be given a·strained or forced interpretation. *People v. Browning*, 809 P.2d 1086 (Colo.App.1990). If the court can give effect to the ordinary meaning of the words used in a statute, it should be construed as written without resort to interpretive rules of statutory construction. *State v. Nieto*, 993 P.2d 493 (Colo.2000).

Section 38–30–167 speaks only in terms of conveying property. It does not in any way refer to the allocation of casualty losses between the buyer and seller in a contract for the sale of real estate. We would have to read terms into the statute to reach the construction urged by Grocery Kart. Because we must construe the statute as written, we reject this contention.

Therefore, we hold that since this risk of loss was not allocated by the contract, the doctrine of equitable conversion places that risk on the buyer, Grocery Kart.

Accordingly, the judgment is affirmed.

Judge NEY and Judge MARQUEZ concur.