BRUSH GROCERY KART, INC.,
a Colorado corporation,
Petitioner,

v.

SURE FINE MARKET, INC., a Colorado
corporation, Respondent.

No. 01SC267.

Supreme Court of Colorado,
En Banc.

June 3, 2002.

Edward L. Zorn, Fort Morgan, CO, Attorney for Petitioner.

Robert B. Chapin, Brush, CO, Attorney for Respondent.

Justice COATS delivered the Opinion of the Court.

Brush Grocery Kart, Inc. sought review of the court of appeals' judgment affirming the district court's determination of Brush's obligation on an option contract to purchase a building from Sure Fine Market, Inc. *Brush Grocery Kart v. Sure Fine Market*, 30 P.3d 810 (Colo.App.2001). The district court found that Brush was not entitled to a price abatement for damages caused by a hail storm that occurred during litigation between the parties over the purchase price of the property. The court of appeals affirmed on the grounds that equitable title to the property vested in Brush when it exercised its option to purchase, whether or not it also had a right of possession, and therefore Brush bore the risk of any casualty loss after that time. Because we hold that Brush was entitled to specific performance of the contract with an abatement of the purchase price reflecting the casualty loss, the judgment of the court of appeals is reversed.

## I. FACTUAL AND PROCEDURAL HISTORY

In October 1992 Brush Grocery Kart, Inc. and Sure Fine Market, Inc. entered into a five-year "Lease with Renewal Provisions and Option to Purchase" for real property, including a building to be operated by Brush as a grocery store. Under the contract's purchase option provision, any time during the last six months of the lease, Brush could elect to purchase the property at a price equal to the average of the appraisals of an expert designated by each party.

Shortly before expiration of the lease, Brush notified Sure Fine of its desire to purchase the property and begin the process of determining a sale price. Although each party offered an appraisal, the parties were unable to agree on a final price by the time the lease expired. Brush then vacated the premises, returned all keys to Sure Fine, and advised Sure Fine that it would discontinue its casualty insurance covering the property during the lease. Brush also filed suit, alleging that Sure Fine failed to negotiate the price term in good faith and asking for the appointment of a special master to determine the purchase price. Sure Fine agreed to the appointment of a special master and counterclaimed, alleging that Brush negotiated the price term in bad faith and was therefore the breaching party.

During litigation over the price term, the property was substantially damaged during a hail storm. With neither party carrying casualty insurance, each asserted that the other was liable for the damage. The issue was added to the litigation at a stipulated amount of $60,000. The court appointed a special master pursuant to C.R.C.P. 53 and accepted his appraised value of $375,000. The court then found that under the doctrine of equitable conversion, Brush was the equitable owner of the property and bore the risk of loss. It therefore declined to abate the purchase price or award damages to Brush for the loss.

Brush appealed the loss allocation, and the court of appeals affirmed on similar grounds. It considered the prior holdings of this court acknowledging the doctrine of equitable conversion and found that in *Wiley v. Lininger*, 119 Colo. 497, 204 P.2d 1083 (1949), that doctrine was applied to allocate the risk of casualty loss occurring during the executory period of a contract for the purchase of real property. Relying heavily on language from the opinion purporting to adopt the "majority rule," the court of appeals found that our characterization of the rule as placing the risk of casualty loss on a vendee who "is in possession," *id.* at 502, 204 P.2d at 1086, reflected merely the facts of that case rather than any intent to limit the rule to vendees who are actually in possession. Noting that allocation of the risk of loss in circumstances where the vendee is not in possession had not previously been addressed by an appellate court in this jurisdiction, the court of appeals went on to conclude that a "bright line rule" allocating the risk of loss to the vendee, without regard to possession, would best in-

form the parties of their rights and obligations under a contract for the sale of land.

Brush petitioned for a writ of certiorari to determine the proper allocation of the risk of loss and the appropriate remedy under these circumstances.[1]

## II.  SECTION 38–30–167, 10 C.R.S. (2001)

The General Assembly in this jurisdiction has often codified or altered various aspects of common law doctrines concerning interests in real property. *See, e.g.,* title 38, art. 30, 10 C.R.S. (2001) ("Interests in Land: Titles and Interests").  Although the legislature has not expressly addressed the allocation of casualty loss risk in the context of a sale of real property, in 1979 it added to the revised statutes a provision concerning the remedies available to a vendee upon a failure of the vendor to fully comply due to impossibility:

> If it is possible for a vendor of real property to convey a portion of the real property he contracted to convey, the vendee has a right to obtain a conveyance of that portion which it is possible to convey and a right to obtain damages or other equitable relief concerning the portion which it is impossible to convey.

*See* § 38–30–167, 10 C.R.S. (2001).  Brush asserts that this provision implicitly allocates the risk of casualty loss during the executory period of the contract to the vendor.

■ While this language of the statute could be understood, in its most literal sense, to mean that the vendee is always entitled to damages or other equitable relief for that portion of real property that a vendor has agreed, but is unable, to convey, such a broad reading would lead to absurd results and is clearly not the only permissible understanding of the operative language.  The section is entitled, "Right of purchaser to obtain partial specific performance," and its central provision insures a purchaser's right to the conveyance of a portion of the contract property,

even if the vendor is no longer capable of conveying all of it.  By conjoining the right of partial specific performance and a right to damages or other equitable relief, the statute simply makes clear that the remedy of partial specific performance is an additional remedy rather than a substitute for any relief to which the purchaser would be entitled for the vendor's inability to fully comply with the terms of the contract.

The fact that the statute provides a different type of remedy for each "portion" of the property need not mean, however, that the legislature intended to assign liability for casualty loss to the vendor in every case.  Such an implication would be contrary to accepted defenses, and would, on its face, entitle a vendee to damages even if he were at fault.  Nor is it even clear from the language of the statute itself that casualty loss to improvements on the property materially changing their condition from the time of the contract would make it impossible to convey a portion of the real property as contemplated by the statute.

■ If the language of a statute is not clear, various aids to construction, including consideration of any relevant legislative history, may assist in resolving the ambiguity. *Reg'l Transp. Dist. v. Outdoor Sys., Inc.,* 34 P.3d 408, 414 (Colo.2001).  While the testimony of the bill's sponsor in committee hearings suggests that he did not necessarily consider casualty loss to improvements to be outside the scope of the statute, it also makes clear that the legislation was specifically crafted to entitle a vendee to force a conveyance of any conveyable portion of the property rather than merely settle for damages for breach of the contract.  *See* Hearing on Senate Bill 470, Before the Senate Judiciary Committee, 52d General Assembly, 1st Regular Session (hearing tape, Mar. 13, 1979); Hearing on Senate Bill 470, Before the House Judiciary Committee, 52d General Assembly, 1st Regular Session (hearing tape,

1. Our grant of certiorari was on the following issue:

> Whether or not the Colorado Court of Appeals erred in its determination that under Colorado law, a purchaser of real property assumes the risk and burden of casualty loss to the subject

> real property as of the date of the execution of the contract or other instrument whereby a purchaser has agreed to purchase and the seller has agreed to sell the subject real property even though neither possession nor title has passed to the purchaser.

April 10, 1979). The bill was expressly characterized as an attempt to overrule the holding of this court in *Atchison v. City of Englewood,* 193 Colo. 367, 568 P.2d 13 (1977), which the sponsor understood to eliminate the remedy of partial specific performance, and was apparently never intended to create a separate right of vendees to obtain damages or other equitable relief for any unconveyable portion of the property, without regard to other considerations. *See* Hearings on Senate Bill 470.

■ In light of this clear legislative history, section 38–30–167 can be reasonably understood only as providing a remedy to vendees of partial specific performance in addition to any right to which they would otherwise be entitled to damages or other equitable relief concerning the portion of the property that could not be conveyed. The legislature has simply failed to assign the risk of casualty loss during the executory period of a contract for the sale of real property in this or apparently any other statute. Where no statute controls, interests in real property must be determined by reference to the common law. *ALH Holding Co. v. Bank of Telluride,* 18 P.3d 742, 745 (Colo.2000).

## III. THE RISK OF CASUALTY LOSS IN THE ABSENCE OF STATUTORY AUTHORITY

■ In the absence of statutory authority, the rights, powers, duties, and liabilities arising out of a contract for the sale of land have frequently been derived by reference to the theory of equitable conversion. *People v. Alexander,* 663 P.2d 1024, 1030 n. 6 (Colo.1983)(quoting III *American Law of Property* § 11.22, at 62–63 (A. Casner ed.1974)). This theory or doctrine, which has been described as a legal fiction, *see Chain O'Mines v. Williamson,* 101 Colo. 231, 234, 72 P.2d 265, 266 (1937), is based on equitable principles that permit the vendee to be considered the equitable owner of the land and debtor for the purchase money and the ven-

dor to be regarded as a secured creditor. *Alexander,* 663 P.2d at 1030 n. 6. The changes in rights and liabilities that occur upon the making of the contract result from the equitable right to specific performance. *Id.* Even with regard to third parties, the theory has been relied on to determine, for example, the devolution, upon death, of the rights and liabilities of each party with respect to the land, *see Chain O'Mines,* 101 Colo. at 234–35, 72 P.2d at 266, and to ascertain the powers of creditors of each party to reach the land in payment of their claims. *Alexander,* 663 P.2d at 1030 n. 6.

The assignment of the risk of casualty loss in the executory period of contracts for the sale of real property varies greatly throughout the jurisdictions of this country. What appears to yet be a slim majority of states, *see* Randy R. Koenders, Annotation, *Risk of Loss by Casualty Pending Contract for Conveyance of Real Property Modern Cases,* 85 A.L.R.4th 233 (2001), places the risk of loss on the vendee from the moment of contracting, on the rationale that once an equitable conversion takes place, the vendee must be treated as owner for all purposes. *See Skelly Oil v. Ashmore,* 365 S.W.2d 582, 588 (Mo.1963)(criticizing this approach). Once the vendee becomes the equitable owner, he therefore becomes responsible for the condition of the property, despite not having a present right of occupancy or control. In sharp contrast, a handful of other states reject the allocation of casualty loss risk as a consequence of the theory of equitable conversion and follow the equally rigid "Massachusetts Rule," under which the seller continues to bear the risk until actual transfer of the title, absent an express agreement to the contrary. *See, e.g., Skelly Oil,* 365 S.W.2d at 588–89. A substantial and growing number of jurisdictions, however, base the legal consequences of no-fault casualty loss on the right to possession of the property at the time the loss occurs. *Koenders, supra,* §§ 6, 7. This view has found expression in the Uniform Vendor and Purchaser Risk Act,[2]

2. Under the Uniform Vendor and Purchaser Risk Act § 1, 14 U.L.A. 471 (1968)("Risk of Loss"): Any contract hereafter made in this State for the purchase and sale of realty shall be interpreted as including an agreement that the par-

ties shall have the following rights and duties, unless the contract expressly provides otherwise:
(a) If, when neither the legal title nor the possession of the subject matter of the contract

and while a number of states have adopted some variation of the Uniform Act, others have arrived at a similar position through the interpretations of their courts. *See, e.g., Lucenti v. Cayuga Apartments,* 48 N.Y.2d 530, 423 N.Y.S.2d 886, 399 N.E.2d 918, 923–24 (1979); *see also Koenders, supra,* §§ 6, 7.

This court has applied the theory of equitable conversion in limited circumstances affecting title, *see Konecny v. von Gunten,* 151 Colo. 376, 379 P.2d 158 (1963)(finding vendors incapable of unilaterally changing their tenancy in common to joint tenancy during the executory period of the contract because their interest had been equitably converted into a mere security interest and the vendee's interest into realty), and refused to apply it in some circumstances, *see Chain O'Mines,* 101 Colo. 231, 72 P.2d 265 (holding that even if the doctrine applies to option contracts, no conversion would take place until the option were exercised by the party having the right of election). It has also characterized the theory as affording significant protections to purchasers of realty in Colorado. *See Dwyer v. Dist. Court,* 188 Colo. 41, 532 P.2d 725 (1975)(finding personal jurisdiction over out-of-state vendee in part because of the protections afforded vendees of land in this jurisdiction during the executory period of the contract). It has never before, however, expressly relied on the theory of equitable conversion alone as allocating the risk of casualty loss to a vendee.

In *Wiley v. Lininger,* 119 Colo. 497, 204 P.2d 1083, where fire destroyed improvements on land occupied by the vendee during the multi-year executory period of an installment land contract, we held, according to the generally accepted rule, that neither the buyer nor the seller, each of whom had an insurable interest in the property, had an obligation to insure the property for the benefit of the other. *Id.* at 502, 204 P.2d at 1085–86. We also adopted a rule, which we

characterized as "the majority rule," that "the vendee under a contract for the sale of land, being regarded as the equitable owner, assumes the risk of destruction of or injury to the property *where he is in possession,* and the destruction or loss is not proximately caused by the negligence of the vendor." *Id.* (emphasis added). The vendee in possession was therefore not relieved of his obligation to continue making payments according to the terms of the contract, despite material loss by fire to some of the improvements on the property.

Largely because we included a citation, preceded by the introductory signal, "see," to an A.L.R. annotation, describing a "majority rule" without reference to possession, *see* 101 A.L.R. 1241 (superseded by *Koenders, supra* ), the court of appeals found our characterization of the rule, as imposing the risk on vendees who are in possession, to be uncontrolling. While it may have been unnecessary to determine more than the obligations of a vendee in possession in that case, rather than limit the holding to that situation, this court pointedly announced a broader rule. The rule expressly articulated by this court limited the transfer of the risk of loss to vendees who are already in possession. Had this not been the court's deliberate intention, there would have been no need to mention possession at all because a rule governing all vendees would necessarily include vendees in possession. Whether or not a majority of jurisdictions would actually limit the transfer of risk in precisely the same way, the rule as clearly stated and adopted by this court was supported by strong policy and theoretical considerations at the time, and those considerations apply equally today.

■ Those jurisdictions that indiscriminately include the risk of casualty loss among the incidents or "attributes" of equitable ownership do so largely in reliance on ancient authority or by considering it necessary

---

has been transferred, all or a material part thereof is destroyed without fault of the purchaser or is taken by eminent domain, the vendor cannot enforce the contract, and the purchaser is entitled to recover any portion of the price that he has paid;

(b) If, when either the legal title or the possession of the subject matter of the contract has

been transferred, all or any part thereof is destroyed without fault of the vendor or is taken by eminent domain, the purchaser is not thereby relieved from a duty to pay the price, nor is he entitled to recover any portion thereof that he has paid.

for consistent application of the theory of equitable conversion. *See Skelly Oil,* 365 S.W.2d at 592 (Stockman, J. dissenting)(quoting 4 Williston, *Contracts,* § 929, at 2607: "Only the hoary age and frequent repetition of the maxim prevents a general recognition of its absurdity."); *see also Paine v. Meller,* (1801) 6 Ves. Jr. 349, 31 Eng. Reprint 1088. Under virtually any accepted understanding of the theory, however, equitable conversion is not viewed as entitling the purchaser to every significant right of ownership, and particularly not the right of possession. As a matter of both logic and equity, the obligation to maintain property in its physical condition follows the right to have actual possession and control rather than a legal right to force conveyance of the property through specific performance at some future date. *See* 17 Samuel Williston, *A Treatise On the Law of Contracts* § 50:46, at 457–58 (Richard A. Lord ed., 4th ed. 1990) ("[I]t is wiser to have the party in possession of the property care for it at his peril, rather than at the peril of another.").

The equitable conversion theory is literally stood on its head by imposing on a vendee, solely because of his right to specific performance, the risk that the vendor will be unable to specifically perform when the time comes because of an accidental casualty loss. It is counterintuitive, at the very least, that merely contracting for the sale of real property should not only relieve the vendor of his responsibility to maintain the property until execution but also impose a duty on the vendee to perform despite the intervention of a material, no-fault casualty loss preventing him from ever receiving the benefit of his bargain. Such an extension of the theory of equitable conversion to casualty loss has never been recognized by this jurisdiction, and it is neither necessary nor justified solely for the sake of consistency.

By contrast, there is substantial justification, both as a matter of law and policy, for not relieving a vendee who is entitled to possession before transfer of title, like the vendee in *Wiley,* of his duty to pay the full contract price, notwithstanding an accidental loss. In addition to having control over the property and being entitled to the benefits of

its use, an equitable owner who also has the right of possession has already acquired virtually all of the rights of ownership and almost invariably will have already paid at least some portion of the contract price to exercise those rights. By expressly including in the contract for sale the right of possession, which otherwise generally accompanies transfer of title, *see, e.g.,* § 38–30–120, 10 C.R.S. (2001)("Conveyance carries right of possession"), the vendor has for all practical purposes already transferred the property as promised, and the parties have in effect expressed their joint intention that the vendee pay the purchase price as promised. Williston, *supra,* § 50:46 at 454–55.

■ In *Wiley,* rather than adopting a rule to the effect that a vendee assumes the risk of casualty loss as an incident of equitable ownership, our holding stands for virtually the opposite proposition. Despite being the equitable owner, the vendee in that case was prohibited from rescinding only because he was already rightfully in possession at the time of the loss. While *Wiley* could be read to have merely resolved the situation under an installment contract for the sale of land that gave the vendee a right of immediate possession, the rule we adopted foreshadowed the resolution of this case as well. In the absence of a right of possession, a vendee of real property that suffers a material casualty loss during the executory period of the contract, through no fault of his own, must be permitted to rescind and recover any payments he had already made. *Cf.* Uniform Vendor and Purchaser Risk Act § 1.

■ Furthermore, where a vendee is entitled to rescind as a result of casualty loss, the vendee should generally also be entitled to partial specific performance of the contract with an abatement in the purchase price reflecting the loss. Where the damage is ascertainable, permitting partial specific performance with a price abatement allows courts as nearly as possible to fulfill the expectations of the parties expressed in the contract, while leaving each in a position that is equitable relative to the other. *Lucenti,* 423 N.Y.S.2d 886, 399 N.E.2d at 923–24 (applying common law rule allowing partial specific enforcement with price abatement for

casualty loss in order to effectuate substance of parties agreement). Partial specific performance with a price abatement has long been recognized in this jurisdiction as an alternative to rescission in the analogous situation in which a vendor of real property is unable to convey marketable title to all of the land described in the contract. *See Murdock v. Pope,* 156 Colo. 7, 396 P.2d 841 (1964)(collecting cases into the nineteenth century); *cf.* § 38–30–167.

■ Here, Brush was clearly not in possession of the property as the equitable owner. Even if the doctrine of equitable conversion applies to the option contract between Brush and Sure Fine and could be said to have converted Brush's interest to an equitable ownership of the property at the time Brush exercised its option to purchase, *see Chain O'Mines,* 101 Colo. at 235, 72 P.2d at 266, neither party considered the contract for sale to entitle Brush to possession. Brush was, in fact, not in possession of the property, and the record indicates that Sure Fine considered itself to hold the right of use and occupancy and gave notice that it would consider Brush a holdover tenant if it continued to occupy the premises other than by continuing to lease the property. The casualty loss was ascertainable and in fact stipulated by the parties, and neither party challenged the district court's enforcement of the contract except with regard to its allocation of the casualty loss. Both the court of appeals and the district court therefore erred in finding that the doctrine of equitable conversion required Brush to bear the loss caused by hail damage.

## IV. CONCLUSION

Where Brush was not an equitable owner in possession at the time of the casualty loss, it was entitled to rescind its contract with Sure Fine. At least under the circumstances of this case, where Brush chose to go forward with the contract under a stipulation as to loss from the hail damage, it was also entitled to specific performance with an abatement of the purchase price equal to the casualty loss. The judgment of the court of appeals is therefore reversed and the case is

remanded for further proceedings consistent with this opinion.