Mary Ann GUSTIN, Appellant,

v.

Ronald D. STEGALL and Frank Howard,
Administrator, Estate of Ann C.
Howard, Appellees.

No. 9161.

District of Columbia Court of Appeals.

Argued June 18, 1975.

Decided Nov. 11, 1975.

Rehearing Denied Dec. 19, 1975.

───────◆───────

Elaine C. Major, Arlington, Va., for appellant. D. Heywood Hardy, Washington, D.C., was on the brief for appellant.

Peter R. Kolker, Washington, D.C., for appellee Stegall.

Harry W. Goldberg, Washington, D.C., for appellee Howard. Nathan Rubey, Washington, D.C., also entered an appearance for appellee Howard.

Before REILLY, Chief Judge, and KELLY and HARRIS, Associate Judges.

REILLY, Chief Judge:

Challenged on this appeal is a judgment in favor of a purchaser for specific performance of a contract to sell a parcel of real property at 712 East Capitol Street, N.E., for the sum of $125,000. On its face the contract shows what purported to be the signatures of the purchaser (dated December 7, 1973), and the sellers, Mary A. Gustin and Ann C. Howard (dated January 3, 1974), who held title as "joint tenants with rights of survivorship."

Prior to the settlement date ("on or before May 1, 1974"), when the joint tenants were obligated to convey a warranty deed and the purchaser to make a cash payment of $18,000 and execute notes and security instruments for the balance, the latter learned through the designated real estate broker that the joint tenants were contracting through another broker for the sale of the property to a different person. Thereupon the purchaser brought suit for specific performance. This suit, filed on February 19, 1974, named the two joint tenants as defendants. The complaint also sought preliminary injunctive relief (subsequently granted before trial) against the defendants' conveying the property to any third party until plaintiff's rights had been adjudicated.

Soon after filing suit, the plaintiff-purchaser discovered that one of the joint tenants, Mrs. Gustin, had not actually signed the contract, her apparent signature having been written on the instrument by Mrs. Howard, the other joint tenant.[1] Plaintiff thereupon moved to amend his complaint by adding to it a "Count II" charging the codefendants with fraud and asking as an alternative for the relief previously requested an award of punitive damages. The motion was granted.

The judgment rendered at the subsequent trial turned largely on the question —a mixed issue of law and fact—of whether one codefendant had authorized the other to affix her signature to the contract. In answering this question in the affirmative, the trial court reached its conclusion by resolving conflicting testimony not only with respect to the events which preceded the signing of the contract, but the underlying facts concerning origin of the joint tenancy prior to the sale negotia-

---

1. This information was elicited by the answers to an interrogatory served on defendant Howard.

tions. Before reaching the legal issues presented to us on appeal, a brief statement of the undisputed facts seems appropriate.

The joint tenants were mother (Mrs. Howard) and daughter (Mrs. Gustin). For some time prior to 1960, the East Capitol Street property was owned by Carlton Von Emon and occupied by the mother, who operated it as a rooming house pursuant to an understanding with the owner requiring payments from time to time and eventual purchase of the property by her. In 1960, Von Emon and his wife conveyed the property to Mrs. Gustin and her brother, Paul W. Herman. It is undisputed that (1) the titling of the property in this manner was arranged by the mother; (2) the daughter, Mrs. Gustin, advanced at least $5,000;[2] (3) the son, Herman, advanced or paid nothing; and (4) the mother and her second husband, Frank Howard, continued to reside there and rent rooms to lodgers. In 1967, the owners of record conveyed the property to a straw, who immediately executed a deed to Mrs. Howard and Mrs. Gustin as joint tenants with rights of survivorship. Thus, when plaintiff sought to buy the property through the real estate agent with whom it had been listed for sale he assumed that his offer had to be accepted by both joint tenants.

In the course of pretrial discovery, plaintiff on April 30, 1974, took a deposition from the mother (Mrs. Howard), the transcript of which has been certified to this court on appeal. While the deponent was extremely vague about dates, the burden of her testimony was that she and not the codefendant (her daughter, Mrs. Gustin) was the real owner of the property, that when she bought the place from the Von Emons she had directed that the conveyance would name her daughter and son as grantees because a cancer operation indicated she had not long to live, and that in 1967, her son Paul, recently married, told his mother that he wished to relinquish his part of the title; whereupon she arranged for the successive conveyances which made her and Mrs. Gustin the owners of record as joint tenants.

With respect to the contract of sale to the plaintiff she testified that there was nothing unusual about her placing her daughter's seeming signature upon the agreement because over a 20-year period, with her daughter's knowledge and consent, she had been signing her name to various instruments involved in real estate and other financial transactions. Less than two months later (June 25, 1974), the mother died intestate and her husband, Frank Howard, administrator of her estate, was substituted as a codefendant.

At the two-day trial of the case a few months afterward, the codefendants, represented by separate counsel, took opposing positions. The daughter testified that the consideration for the original purchase of the rooming house was money which she had taken from funds belonging to one of her children—a crippled son, Paul Gustin, and that he was the beneficial owner of the property.[3] She emphatically denied any knowledge or participation in the negotiations which culminated in the contract of sale to the purchaser, said that she had never authorized or ratified her signature being placed on such contract, and that in other unrelated transactions the affixing of her signature by the mother to commercial instruments and deeds had been done without her consent, and in defiance of re-

2. This was the figure stated by the mother in a deposition taken April 30, 1974. The deponent called this advance a loan, and the trial court accepted her version of the transaction.

3. Appellant's brief states that shortly before this transaction, Congress passed a private bill awarding $16,000 to Paul Gustin, then a minor, as compensation for injuries incurred in a government hospital. This sum was placed in a guardianship account in the Orphan's Court of Maryland with his mother (Mary Ann Gustin) and father, now deceased, designated as guardians.

peated warnings to her mother to desist from such "forgeries". This testimony was contradicted by other witnesses, including her stepfather, the codefendant, who testified that she had been consulted with respect to the plaintiff's offer of purchase. She had insisted only upon a purchase price of not less than $100,000 according to one of the corroborating witnesses.

The case was tried without a jury. After hearing all the testimony and considering the exhibits, the trial judge entered judgment in favor of the plaintiff but three days later provided the parties with written findings of fact and conclusions of law. As none of the parties to the appeal designated the transcript of the trial testimony as part of the record, this court accepts what summaries of the testimony that document contains as accurate. We see nothing in those findings or in the exhibits certified as part of the record,[4] which gives any support to appellant's contentions that (a) her trial counsel's preparation and presentation was inadequate, and (b) the trial judge was prejudiced against her. Thus the only remaining issues for consideration are whether any of the findings and conclusions of the trial court amounted to substantial error.

The court, disbelieving appellant Gustin's testimony in which she asserted that she had never given her consent to the sale of the East Capitol Street property to the plaintiff, held that on the basis of testimony it found credible, she was aware of the general terms of the proposed sale and did not voice an objection to the contract until

suit to enforce it was begun. Pointing to a checking account maintained by the mother in the daughter's name—but in which the mother drew the checks—and two other real estate transactions involving joint property, where the mother executed the signatures of both joint tenants, the court found that the daughter was fully cognizant of this practice. It concluded that in those instances as well as in the challenged contract of sale the mother was vested with authority by Mrs. Gustin to place her signature on the requisite instruments, and that the plaintiff, having made expenditures prior to the settlement date in the expectation of moving into the property, was entitled to specific performance.[5]

■ In our opinion this conclusion, based as it was on the resolution of conflicting testimony, was not legally erroneous. Appellant argues, however, that a provision of our code [6] denies even a written power of attorney, sufficiency to pass title to real estate. This section, D.C. Code 1973, § 45–401, refers only to deeds of conveyance, and not to contracts to convey. Although the latter are subject to the Statute of Frauds [incorporated into our code as § 28–3502], which limits the enforcibility of certain agreements to those "signed by the party to be charged therewith or a person authorized by him", it has been held that a contract of sale of realty signed by the broker but not the owner-vendor is valid where the broker had been authorized to sell on general terms outlined as acceptable by his principal. *Ochs v. Weil*, 79 U.S.App.D.C. 84, 142 F.2d 758 (1944). Moreover, under circumstances

4. These exhibits include the challenged sales contract and a transcript of the pretrial deposition of the codefendant, Mrs. Howard—properly admitted at the trial because the deponent had died.

5. The court characterized the dealings between mother and daughter as giving the mother "apparent authority" to put the latter's signature on the questioned document. Reference to the term "general" authority would perhaps have been more accurate, as the findings

do not reveal that the daughter ever communicated with the purchaser or his agents. But whatever terminology it used, it is clear that the trial court meant that under the law of agency, Mrs. Gustin could not disavow the contract in the context of his factual determination.

6. § 45–401. Acknowledgment by attorney. No deeds of conveyance of either real or personal estate by individuals shall be executed or acknowledged by attorney.

not dissimilar from those disclosed in this record, we have decided that a joint tenant is estopped from invoking the Statute of Frauds to repudiate on oral agreement. *Brown v. Brown*, D.C.App., 343 A.2d 59 (1975). *See also Schanck v. Jones*, 97 U.S.App.D.C. 148, 229 F.2d 31 (1956); *Brewood v. Cook*, 92 U.S.App.D.C. 386, 207 F.2d 439 (1953).

▪ Accordingly, we affirm the court's holding with respect to the right of the plaintiff and that portion of its order requiring a conveyance to him in fee simple of the entire property described in the contract—not merely the moiety vested in the joint tenant whose actual signature is undisputed.[7]

▪ We have difficulty, however, with the trial court's findings and conclusions with respect to the legal and equitable title on the day the contract was executed. On the stand, Mrs. Gustin said that the money for the original purchase of the property was taken from her son Paul's trust account with an understanding by her mother that the joint grantees would hold it in trust for Paul, permitting the mother to use the premises for her lodging house business. If her testimony was truthful, beneficial title was in Paul. The trial court refused to believe her—in part because none of the guardianship accounts filed reported this transaction—but more importantly because it credited her mother's version, who had deposed that while Mrs. Gustin had lent her $5,000 at the time of the settlement with Von Emon, the deponent had made the payments to the grantor and was the real owner. The court accepted deponent's explanation of the reason that Mrs. Gustin was named a

joint tenant in both the conveyance from Von Emon and the subsequent reconveyance from the straw, *viz*, that this was done on the mother's instructions because she was suffering from cancer. The court characterized this as a matter of estate planning and concluded that beneficial title to the entire property reposed in the mother, Mrs. Howard, from the time of the execution of the Von Emon deed to the date of the contract of sale, and that "by the principle of equitable conversion [her] interest in the property converted to personalty upon [her] death."

In its remedial decree, the court ordered the administrator of the mother's estate to execute a deed conveying all right, title, and interest in the property to the plaintiff.

Insofar as these conclusions rest on findings of fact, which in turn were arrived at by resolving conflicting testimony between mother and daughter, this court deems itself bound by such findings. Thus it was within the province of the trier of fact to reject Mrs. Gustin's account of the first transaction, thereby eliminating from the case the claim she put forth in behalf of Paul Gustin.[8] But it does not follow from even the findings based on the Howard deposition (which we have read) that the court was correct in concluding that as a matter of law beneficial title at all times was vested in Mrs. Howard.

▪ It is true, of course, that as a general rule a resulting trust arises in favor of the one paying for a conveyance which transfers title to another.[9] This is only a presumption, however, and numerous authorities have held that this rule does not apply to a purchase by a parent in the

---

7. Cases holding that a contract to sell by one joint tenant severs the jointure, thereby placing the purchaser in the position of a tenant in common with the noncontracting party, are not pertinent here because the second joint tenant was actually a party to the sale.

8. Thus, we are compelled to affirm a provision in the order of the court requiring the

Recorder of Deeds to expunge from its records a certain "Deed of Correction" executed by appellant in Paul's favor during the pendency of this litigation in the trial court.

9. *McGean v. McGean*, D.C.App., 339 A.2d 384, 388 (1975); *Leeks v. Leeks*, D.C.App., 316 A.2d 859 (1974).

name of a child (or children), which, according to the trial court was what Mrs. Howard accomplished when Von Emon was instructed to deed the property to her son and daughter.[10] Under such circumstances, in the absence of evidence of a contrary intent,[11] the courts have construed the conveyance as an advancement, settlement, or gift. It is clear from deponent's own testimony that she intended a gift of a future interest to the grantees. It is also apparent that when the title was later conveyed to a straw and reconveyed to Mrs. Gustin and herself as joint tenants with right of survivorship, it was contemplated that Mrs. Gustin would be the sole heir to the property unless she predeceased her mother. The trial judge called this a matter of estate planning without explaining that the legal effect of such an instrument was to keep the property out of the general assets of the estate of whichever joint tenant died first, which must have been what the parties contemplated.

■ Thus, in the absence of any attempt on Mrs. Howard's part to revoke the gift, the finding that she was vested at all times with sole beneficial title cannot be sustained. In fact, the subsequent conduct of the mother in the sale negotiations, particularly her use of both names in the telegram of confirmation and the wording of the contract later executed negates any inference of reassertion of sole equitable rights. Moreover, the observations about the proposed price and a purchase money mortgage attributed to Mrs. Gustin by the witnesses whom the court credited reveals that both she and the participants in the family conferences recognized that she had a financial stake in the terms and conditions of any sale ultimately agreed upon.

The contract on its face refers to the joint tenants in the singular as the "Sell-

er", and provides for such "Seller" taking back from the "Purchaser" a second deed of trust to secure payment of $78,000, and a third, to secure the balance of deferred purchase money. There is no provision in the instrument to indicate that the notes in connection with these obligations should be drawn only in Mrs. Howard's favor or that the projected cash payment of $18,000 on the date of the conveyance was to be made only to her. Thus under the terms of the instrument itself both joint tenants were entitled to the proceeds—a point that counsel for the purchaser conceded at oral argument.

In adverting to the principle of equitable conversion from realty to personalty, the trial judge was presumably referring to a doctrine developed by the chancery courts in the early history of English land law, which views a contract of sale as immediately vesting the purchaser with beneficial ownership of the realty, and limiting the property interest of the vendor to the promised consideration (*i. e.,* personalty) —retaining legal title only as trustee for the purchaser until the deed of conveyance is delivered. But this principle came into play—if at all—on the date the challenged contract here was executed, not on Mrs. Howard's death, which occurred a few months later. In jurisdictions which distinguish between devolution of real and personal property, it has been held that if a contract vendor of real estate dies before the settlement date, the purchase money realized from the subsequent conveyance goes not to his heirs, but to the administrator of the decedent's personal estate. When this was the law of the District, the courts here applied this rule. In *Liberty National Bank of Washington v. Smoot,* 135 F.Supp. 654 (D.D.C.1956), the court, in passing on a question of whether a testator's fractional interest in a piece of prop-

10. *See McGean v. McGean, supra* n. 9, and cases cited in 89 C.J.S. *Trusts* § 129b. (1955).

11. Such evidence was produced in *Leeks v. Leeks, supra* n. 9.

erty which he had agreed to sell, was realty or personalty, stated:

> The District of Columbia follows the general rule that a contract of sale of land effects an equitable conversion of it into personalty, and if the vendor dies before the performance of the contract, his rights in it descend to his personal representative. *Griffith v. Stewart,* 31 App.D.C. 29. . . .

Whether the ordinary principles of equitable conversion are applicable when the land to be conveyed is held in joint tenancy is a question on which the authorities are divided. No appellate court in this jurisdiction seems to have addressed itself to this precise question. Several courts have framed the issue in terms of termination of joint tenancies: whether a contract to convey executed by all joint tenants severs or terminates a joint tenancy. If the signing of the contract is tantamount to severance or termination, the contract rights are held in common, with no right of survivorship.[12] But if it does not have this effect, then of course there is a right of survivorship in the contract rights. Some courts view the issue as turning on equitable conversion, with at least one jurisdiction holding outright that such conversion simply does not apply to joint tenancies and hence a surviving wife, who joined in a contract of sale with a husband who died before the settlement date, was entitled to all the proceeds to the exclusion of the husband's estate.[13] The same result

has been reached in other states where one of the joint tenants died prior to the delivery of the deed, sometimes on the ground that the change of form through equitable conversion does not automatically destroy the nature of the interest.[14]

But irrespective of what analysis was made of the equitable conversion problem, the basic question in all these cases was whether the surviving joint tenant, after a contract of sale, is entitled to all the contract proceeds when settlement occurs. None of them even hint at the possibility that the decedent's estate—assuming a genuine joint tenancy which we have found to exist here—takes, to the exclusion of the surviving joint tenant.

As we have previously observed, no court in this jurisdiction seems to have decided the narrow question of whether the right of survivorship between joint tenants is extinguished by the execution of a sales contract, although there are cases holding that the proceeds of a sale by tenants by the entirety, if still in a special fund or in escrow at the date of one spouse's death, cannot be reached by creditors of the decedent. *Held v. McNett,* D.C.Mun.App., 154 A.2d 349 (1959). *See also In Re Estate of Wall,* 142 U.S.App.D.C. 187, 440 F.2d 215 (1971) and *Prather v. Hill,* D.C.App., 250 A.2d 690 (1969).

■ Because of one aspect of this case, however, we are not called upon to decide this question. We refer to Mrs. Gustin's refusal to acknowledge the validity of the

---

12. This is the rule in Maryland. *Register of Wills for Montgomery County v. Madine,* 242 Md. 437, 219 A.2d 245 (1966). *Accord, In Re Baker's Estate,* 247 Iowa 1380, 78 N.W.2d 863 (1956) (a tenancy by the entirety, with husband dying prior to execution of conveyance); *Buford v. Dahlke,* 158 Neb. 39, 62 N.W.2d 252 (1954); *Konecny v. von Gunten,* 151 Colo. 376, 379 P.2d 158 (1963); *Panushka v. Panushka,* 221 Or. 145, 349 P.2d 450 (1960).

13. *Watson v. Watson,* 5 Ill.2d 526, 126 N.E.2d 220 (1955). The court remarked:
   The facts here indicate that joint tenants entered into a contract to sell property con-

ditioned upon certain payments to be made by the buyer. The doctrine of equitable conversion would have no application on these facts to divest the surviving joint tenant of her rights, as survivor, to the proceeds to be paid under the contract. [126 N.E.2d at 224.]

14. *In Re Estate of Rickner,* 518 P.2d 1160 (Mont.1974). *See also In Re Maguire's Estate,* 251 App.Div. 337, 296 N.Y.S. 528 (1937), *aff'd without opinion,* 277 N.Y. 527, 12 N.E.2d 458 (1938); *Hewitt v. Beige,* 183 Kan. 352, 327 P.2d 872 (1958).

sales contract. Had it not been for this refusal, delivery of the deed would have occurred in the lifetime of her mother, Mrs. Howard. Under these circumstances, in the absence of any evidence of an agreement to hold the proceeds jointly, the purchase money and the interest in the grantee's notes for the balance would have been held in common, *Secrist v. Secrist,* 284 App.Div. 331, 132 N.Y.S.2d 412 (1954), *aff'd,* 308 N.Y. 750, 125 N.E.2d 107 (1955), because in this jurisdiction, as in New York, there is a presumption against joint tenancies unless expressly declared. D.C. Code 1973, § 45–816. Accordingly, the order of the trial court should be revised to require execution of a conveyance by Mrs. Gustin as well as the administrator of the Howard estate, each being entitled to an equal share of the consideration upon delivery to the purchaser, with any prior advances by Mrs. Gustin or any unreimbursed payments for taxes, maintenance, or other incidentals by the Administrator, to be equally apportioned between the grantors.

*Affirmed in part; reversed in part; and remanded for such modification of the order as is consistent with this opinion.*