**Maybell LEEKS, Appellant,**

v.

**Lavinia Carmen LEEKS and Dwight Wesley Leeks, Appellees.**

No. 85–835.

District of Columbia Court of Appeals.

Argued May 9, 1989.

Decided Oct. 27, 1989.

As Amended on Grant of Rehearing March 14, 1990.

Diane M. Brenneman, with whom W. Edward Morgan and Francis B. Stevens, Washington, D.C. were on the brief, for appellant.

Christopher M. Lahiff, Washington, D.C., for appellees.

Before NEWMAN, STEADMAN and SCHWELB, Associate Judges.

NEWMAN, Associate Judge:

This case arises from a protracted dispute between a grandmother, Maybell Leeks, and her grandchildren, Lavinia and Dwight Leeks, concerning the ownership of residential property, and was first before this court in 1974. *Leeks v. Leeks,* 316 A.2d 859 (D.C.1974) (*Leeks I*). In the latest of a series of rulings made over the last decade, the trial court granted summary judgment in favor of Lavinia and Dwight Leeks, decreeing that they held an undivided two-thirds interest in the property, the remaining one-third interest held by Maybell Leeks in fee simple as a result of *Leeks I.*

Maybell Leeks alleges that the trial court erred in granting summary judgment in favor of appellees. She asserts that she holds the total fee simple interest in the house because a resulting trust was created in favor of her late husband, William Leeks, when the property was purchased in 1947. Lavinia and Dwight Leeks counter that no resulting trust was created and that even if one was, it is void because their grandfather illegally obtained the benefits of a Veteran's Administration loan through his son, James Leeks. We reject appellee's illegality defense. We find that the record does not show the absence of a genuine issue of material fact as to who owned the remainder interest in the two-thirds interest not resolved by *Leeks I;* we reverse so much of the summary judgment as Maybell Leeks appeals.

## I.

The events giving rise to this litigation began in 1947 when William Leeks (grandfather to Lavinia and Dwight Leeks and husband of Maybell Leeks) asked his son, James (father of Lavinia and Dwight Leeks), a World War II veteran, if he would purchase a home in the District of Columbia in his (James's) name, so that William could obtain the benefits of a veteran's loan. *Leeks I, supra,* 316 A.2d at 860. James Leeks, as an honorably discharged veteran, was entitled under the Serviceman's Readjustment Act of 1944, Pub.L. No. 78–346, 58 Stat. 284–301 (1944), as amended by Act of December 28, 1945, Pub.L. No. 78–268, 59 Stat. 623–32 (hereinafter "S.R.A."), to have a loan for the purchase of realty guaranteed by the Veteran's Administration. *See* 38 U.S.C. §§ 1801–1827 (1982) (current codification of statute). James Leeks agreed and signed a contract for the purchase of a house at 4531 Eads Street, N.E. He stayed in the house, when he was not in the hospital, from 1947 until 1953, a year after he married Joyce Leeks and moved to Maryland.

It is asserted that William Leeks paid the entire down payment, which amounted to $750.00. *Id.* According to the assertions in *Leeks I,* he made all of the mortgage loan payments on the home from September 22, 1947, the date of the first payment, until the last payment came due on December 19, 1964. He claimed to have paid all of the property taxes and insurance, and financed all improvements, repairs and maintenance costs associated with the house.[1] *Leeks I, supra,* 316 A.2d at 860.

William Leeks died intestate on May 6, 1974, and Maybell Leeks, whom he married after his first wife's death in 1951, says she continued to pay taxes and make repairs on the property. James Leeks died intestate in 1970. Prior to his death, James adopted his wife's two children, Lavinia and Dwight Leeks, the appellees herein.

In *Leeks I,* William Leeks filed suit against James Leeks' widow, Joyce Leeks, seeking to have a resulting trust impressed on the property in his favor. *Id.* at 860. He claimed that the property was purchased in his son's name so that he "could obtain a Veteran's Administration guarantee of the loan" and that James Leeks acted merely as trustee. *Id.* Joyce Leeks denied that her husband had purchased the property as trustee for his father. *Id.* The trial court, per Judge McArdle, found that a resulting trust had been created in favor of William Leeks. *Id.*

This court affirmed the trial court's finding that a resulting trust had been created in favor of William Leeks with respect to the one-third interest of Joyce Leeks. We ordered the trial court to modify its judgment to indicate that it did not affect the unlitigated rights of James's adopted children, Lavinia and Dwight Leeks, who were not joined as parties in *Leeks I.* This court held, however, that the judgment in favor of William Leeks against Joyce Leeks was final. *Id.*[2]

In so holding, the court implicitly recognized that, as the record title holder of the property in question, James's title to the property passed to his wife and two adopted children upon his death. D.C.Code § 19–301 (1989). Under D.C. Law, the surviving spouse is entitled to one-third of the estate and the remaining two-thirds is divided equally among the children. D.C. Code § 19–303 (1989). Thus, in *Leeks I,* we concluded that the decision would not affect the two thirds interest held by Lavinia and Dwight Leeks:

---

1. According to the record in *Leeks I,* William Leeks replaced the roof, built a stone wall in front of the house, paid for the installation of the sidewalk and curb, built a recreation room in the basement, paved the alley and painted the interior and exterior of the house when necessary. According to the record in *Leeks I,* none of these improvements were discussed with James Leeks.

2. The court refused to address Joyce Leeks's claim that the resulting trust could not be impressed upon the property since the Veteran Administration loan had been obtained for illegal purposes (i.e., for the use of the nonveteran father rather than the veteran son), since she failed to take an appeal on this issue at trial or in any post trial motion. *Leeks I, supra,* 316 A.2d at 860–61.

We find that this case is an appropriate one for modifying the judgment in order to protect the interest of the absent heirs, as to whom the judgment should not be res judicata, *without disturbing the finality of [William Leeks'] judgment against [Joyce Leeks]*.

*Leeks I, supra*, 316 A.2d at 862. (emphasis added). After *Leeks I*, William conveyed the property to himself and his wife, as tenants by the entirety.

Upon remand, the trial court joined Lavinia and Dwight Leeks to its previous order in an effort to make the resulting trust binding on them as well as their mother, Joyce Leeks. A second appeal was taken to this court; we reversed the judgment of the trial court and remanded with directions to the trial court to clarify that its original judgment was effective only as to the one-third interest in the property held by Joyce Leeks. In this second appeal we stated:

> [Lavinia and Dwight Leeks] are, of course, entitled to their day in court before they can be deprived of any interest they may have in the property in question and so far their rights have not been litigated ... the [trial] court is directed to enter an order making it clear that the [original] judgment ... was only effective as to the interest of Joyce Leeks.

*Leeks v. Leeks*, No. 8848, at 2 (July 10, 1975) (unpublished opinion (*Leeks II*).

Lavinia and Dwight Leeks commenced the instant action in January 1973 against William, seeking a declaration of title. William counterclaimed in April 1974 seeking the imposition of a resulting trust on the children's interest.[3] In May 1974, the children filed their first motion for summary judgment. They argued that any agreement, whereby a veteran attempts to take title to property purchased with a loan guaranteed by the Veteran's Administration and hold it in trust for another, is illegal and thus void and against public policy. William Leeks[4] opposed the motion, arguing that it was James' intention that the property be William's and thus that a resulting trust had been created. The motion was denied by Judge McArdle.

This case remained dormant for the next several years until Lavinia and Dwight Leeks filed their second motion for summary judgment. On April 28, 1983, Judge McArdle granted their motion for summary judgment. The order was limited to a declaratory judgment that Lavinia and Dwight Leeks "own an undivided two-thirds interest as tenants in common in [the property]." On March 12, 1984, Lavinia and Dwight Leeks filed a motion for the appointment of trustees and appraisers to oversee the private sale of the property. This motion was assigned to Judge Murphy, who granted the motion.

On April 27, 1984, Maybell Leeks moved to set aside both the order granting summary judgment and the order for sale of the property, and filed motions to reopen discovery and to amend the answer. Judge McArdle, now back on the case, granted the motion to set aside both previous orders—effectively vacating his own prior grant of summary judgment and Judge Murphy's order to hold a private sale. Thus, Lavinia and Dwight Leeks's second motion for summary judgment was left pending.

A hearing was held on March 28, 1985. Judge McArdle orally stated that Maybell Leeks was going to live in the house as long as he (Judge McArdle) lived. His written order, however, granted Lavinia and Dwight Leeks' motion for summary judgment unconditionally. Since it is the written order which is controlling, *See Glens Falls Ins. Co. v. Satree*, 320 F.2d 92, 95 (9th Cir.1963) ("ordinarily, a judgment supercedes any conflict in findings, and findings supplant any conflict in ad lib talk of the trial court"), *See also* Super.Ct. Civ.R. 54(b) and 58, Maybell Leeks was left

---

**3.** Subsequently, leave was sought to amend this counterclaim to allege gift and adverse possession. This motion was denied at the time summary judgment was granted on the complaint in chief. Since today we reverse the grant of summary judgment, the issue of amendment of the counterclaim is revived as no longer moot.

**4.** Upon the death of William Leeks, Maybell Leeks was substituted as a party.

with an undivided one-third with Lavinia and Dwight Leeks each owning an undivided one-third as well. Maybell Leeks appeals this order.

## II.

In reviewing a grant of summary judgment, this court's standard of review is the same as that of the trial court when it initially considers a motion for summary judgment. *Holland v. Hannan*, 456 A.2d 807, 814 (D.C.1983); *Wyman v. Roesner*, 439 A.2d 516, 519 (D.C.1981); Sup.Ct.Civ.R. 56(c) (1988). This court must conduct an independent review of the record, *Holland, supra*, 456 A.2d at 814, and will find for the moving party as a matter of law only when "there is no genuine issue of material fact" present at the time the motion is made. *Patrick v. Hardisty*, 483 A.2d 692, 696 (D.C.1984); *Murphy v. Army Distaff Foundation, Inc.*, 458 A.2d 61, 62 (D.C. 1983). Furthermore, when cases involve determinations as to motive or intent, summary judgment should be granted sparingly. *Spellman v. American Security Bank*, 504 A.2d 1119, 1122 (D.C.1986); *see also Robinson v. Evans*, 554 A.2d 332, 338 (D.C.1989); *Wyman, supra*, 439 A.2d at 519 (citing *Willis v. Cheek*, 387 A.2d 716, 719 (D.C.1978). Because we hold that the record does not show the absence of a material issue of fact as to the ownership of the property, we reverse.

## III.

In *Leeks I*, this court held that a resulting trust was created in favor of William Leeks. We specifically stated, however, that because Lavinia and Dwight Leeks had not been joined in the action, the judgment as to them "should not be res judicata," but that William Leeks's judgment against Joyce Leeks was final. *Leeks I, supra*, at 316 A.2d at 862.[5] The only issues remaining after *Leeks I* are: (1) what interest, if any, Lavinia and Dwight Leeks inherited as the heirs of James Leeks, and (2) whether the defense of illegality is available to defeat any interest held by Maybell Leeks as to the remaining two-thirds interest in the property that is still in dispute.

■ Maybell Leeks asserts that a purchase money resulting trust was created in favor of William Leeks for the entire fee.[6] When a transfer of property is made to one person and the purchase price is paid by another, the general rule is that a resulting trust arises in favor of the person who paid the purchase price.[7] RESTATEMENT (SECOND) TRUSTS, § 440; *see also Edwards v. Woods,*

---

**5.** No one disputes that Maybell Leeks holds a one-third interest in the property. Further, Lavinia and Dwight Leeks concede in their brief that they are willing to allow Maybell Leeks to hold a life estate as long as they hold a vested remainder in the remaining two-thirds interest in the property in an effort at compromise and settlement. Such efforts may be pursued on remand.

**6.** We express no view as to whether the pleadings as framed might encompass the theory of constructive trust as well.

**7.** An exception to this general rule arises, however, where the equitable or beneficial holder of the fee is the spouse or child of the person who pays the purchase price. This court, in *Gustin v. Stegall*, refers to *Leeks I* as a circumstance when the presumption that a father intends a gift to his son did not apply based on the original intent between William and James Leeks. 347 A.2d 917, 922 n. 11 (D.C.1975) (dicta).

The spouse or child "is presumed to hold title free of any trust because a gift is a reasonable inference in these circumstances." *Gustin, su-*

*pra,* 347 A.2d at 921–22; HASKELL, PREFACE TO WILLS, TRUSTS & ADMINISTRATION 300 (Foundation Press, 1987); RESTATEMENT (SECOND) TRUSTS §§ 442, 447; *see, e.g., Somer v. Bogart,* 749 S.W.2d 202, 204 (Tex.Ct.App.1988). As with the purchase money resulting trust, however, the nature of the property relationship that arises between parent and child is a question of "pure intention" and "any antecedent or contemporaneous act or facts may be received, either to rebut or support the presumption." *Haliday v. Haliday,* 56 U.S.App.D.C. 179, 181–82, 11 F.2d 565, 568 (1926) (citing Perry on Trusts, § 147); *see also Gragg v. Gragg,* 94 N.C.App. 134, 379 S.E.2d 684, 687 (1989) ("evidence 'of the grantee and the parties' conduct both before and after title passes [is] admissible to show the intent of the payor at the time the deed was made.'") (citations omitted); *Estate of Kling,* 736 S.W.2d 65, 67 (Mo.Ct.App.1987) ("[t]he law implies a resulting trust from the conduct of the parties and the circumstances existing at the time of the transaction from which the trust arose."). In such cases, the burden is on the payor to rebut the presumption that a gift intended. RESTATEMENT (SECOND) TRUSTS § 443.

385 A.2d 780, 783 (D.C.1978); *Gustin v. Stegall,* 347 A.2d 917, 921 (D.C.1975), *cert. denied,* 425 U.S. 974, 96 S.Ct. 2174, 48 L.Ed.2d 798, *reh'g denied,* 429 U.S. 875, 97 S.Ct. 199, 50 L.Ed.2d 159 (1976); *Haliday v. Haliday, supra* at note 7. A classic purchase money resulting trust vests the legal fee and the equitable fee in separate individuals, where "the trustee holds the legal fee and the person paying the purchase price holds the equitable fee. It is the trustee's duty to transfer the legal fee to the equitable title holder whenever the latter requests." HASKELL, PREFACE TO WILLIS, TRUSTS & ADMINISTRATION 301 (Foundation Press, 1987). "The presumption is based on the inference that one who supplies the consideration intends the purchase to be for his own benefit, the conveyance in the name of another being only a matter of convenience." *Prange v. Prange,* 755 S.W.2d 581, 593 (Mo.App.1987). In determining whether a resulting trust has been created, we seek to effectuate the intent of the parties. *Edwards, supra,* 385 A.2d at 784; *see* RESTATEMENT (SECOND) TRUST § 441 (no resulting trust arises when "the person by whom the purchase price is paid manifests an intention that no resulting trust should arise").

This court has also recognized that "there may be a resulting trust of a partial interest in property." *Edwards, supra,* 385 A.2d at 783; *see also Long v. Scott,* 24 U.S.App.D.C. 1, 4–5 (1904) ("For the establishment of ... a resulting trust it must be clearly shown that the whole purchase money was paid by the person seeking to have such trust declared, or that the purchase was of some definite interest or determinate aliquot part of the property."); RESTATEMENT § 454 (Payment of part of purchase price). In *Edwards,* the parties were an unmarried couple who purchased a house together, but title was in the woman's name alone. The court reversed the trial court's holding that no resulting trust had been created and that such a trust

must be "an all-or-nothing proposition." *Edwards, supra,* 385 A.2d at 783–84. Rather, the court stated:

> Although each party sought to prove that he or she was the sole owner, the record compels the inference that they intended to share ownership. For example, Edwards supplied the funds for the down payment, while Woods testified that she made the payments on the deed of trust. The trial court could and did infer that each intended to receive some vested property interest in return for his or her contributions.

> The record, however, fails to support the trial court's finding that the parties did not intend to establish a resulting trust.

*Edwards, supra,* 385 A.2d at 783.[8]

■ Whether William and James Leeks intended to share ownership is unclear on this record. Since *Leeks I,* there has been no further factual development of the circumstances surrounding the transfer of the property in question. Maybell Leeks alleges that the fact that William Leeks made the initial down payment, made all of the payments of the purchase money mortgage, made valuable improvements to the property, took and retained possession of the property, undertook all of the necessary maintenance and repairs, paid the taxes and insurance, and occupied the property as his own is sufficient to find that a resulting trust for the full fee, for William Leeks's benefit, was intended. While these facts have been established as to Joyce Leeks in *Leeks I,* they have not been established thereafter as to Lavinia and Dwight Leeks. Lavinia and Dwight Leeks assert that the fact that James Leeks remained the record title holder until his death and that James Leeks took the steps necessary to initially obtain the loan indicate a contrary intent.

Whether a resulting trust exists with respect to the two thirds interest presently owned by Lavinia and Dwight Leeks is a

---

**8.** As the court in *Edwards* found, in order for a partial resulting trust to arise, both parties must have contributed towards the purchase of the property. Lavinia and Dwight Leeks argue, however, that "as only James Leeks was eligible

for a guaranteed loan, the use of his entitlement to such formed a part of his investment in the property." *Cf. Wright v. Wright,* 2 Ill.2d 246, 118 N.E.2d 280, 284 (1954).

question yet to be judicially resolved either by a trial or, in the unlikely event that there exists no genuine issue of material fact, by summary judgment; *See Willis v. Cheek,* 387 A.2d 716, 719 (summary judgment is to be used sparingly in cases involving motive or intent).

■ We reject appellees' argument that, even if a resulting trust was created in favor of William Leeks, it is unenforceable as a matter of law because William Leeks, a nonveteran, illegally obtained the benefits of the Servicemen's Readjustment Act of 1944 through his veteran son in contravention of the law. The purpose of this act was to enable a veteran of World War II to obtain guaranteed long-term low interest rate loans to be used in purchasing residential property or in constructing a dwelling on unimproved property owned by the veteran or occupied as his home. *See* 38 U.S.C. § 1804(c) (providing that no loan may be made under the Act unless the veteran intends to occupy the property as his or her residence). We agree, as have other courts, that nonveteran use of these loan provisions is illegal. *See Johnson v. Johnson,* 192 Cal.App.3d 551, 237 Cal.Rptr. 644, 647 (1987); *Millin v. Millin,* 36 N.Y.2d 796, 330 N.E.2d 650, 369 N.Y.S.2d 702 (1975); *Wright v. Wright, supra* at note 8. We also agree, however, that "[i]t does not follow that the arrangement between the parties cannot be enforced." *Johnson, supra,* 237 Cal.Rptr. at 647.

We find the analysis set forth in *Johnson*[9] persuasive as applied in precluding any grant of summary judgment on the present record based on the ground of illegality. While condemning such illegal transactions as against public policy and acknowledging that the "rule that the courts will not lend their aid to the enforcement of an illegal agreement," this court also warned that "the courts should not be

so enamored with the Latin phrase, '*in pari delicto*' that they blindly extend the rule to *every* case where illegality appears." *Id.* 237 Cal.Rptr. at 647 (emphasis added). The court stated:

> The fundamental purpose of the rule must always be kept in mind, and the realities of the situation must be considered. Where, by applying the rule, the public cannot be protected because the transaction has been completed, where no serious moral turpitude is involved, where the defendant [veteran] is the one guilty of the greater moral fault, and where to apply the rule will be to permit the defendant to be unjustly enriched at the expense of the plaintiff, the rule should not be applied.

*Id.* 237 Cal.Rptr. at 647–48.

First, the property transfer in this case was completed over forty years ago and the public cannot be protected except by example. Second, Maybell Leeks herself is not shown to have engaged in any "serious moral turpitude"; she was not married to William Leeks when he purchased the property. Indeed, she challenges in her brief whether William knew of the illegality of the underlying transaction. Third, although James may not be "the one guilty of the greatest moral fault," he certainly shared any moral fault with William Leeks, since he applied for the loan at the request of his father and with full knowledge that his father intended to buy a home. Finally, and perhaps most tellingly, Lavinia and Dwight Leeks could be unjustly enriched were we to hold as a matter of law that they owed an undivided two-thirds interest in the house as a result of an illegal transaction in which their father, through whom they claim ownership, was a participant.

## IV.

In conclusion, by virtue of *Leeks I,* Maybell Leeks owns an undivided one-third in-

**9.** In *Johnson,* a veteran offered to obtain financing through the Servicemen's Readjustment Act to enable his parents to purchase a home. *Supra,* 237 Cal.Rptr. at 646. Title was taken in the name of the veteran, although the parents urged him from the beginning to transfer title to them. They sent monthly checks to him so that he could make the actual payments on the loan.

Except for $165.00 for some yard work, the son contributed nothing to the purchase or upkeep of the house. Several years later, the son told the mother that he was going to sell the house and that she was going to have to move. The court held that a resulting trust had arisen in favor of the mother. *Id.* 237 Cal.Rptr. at 646.

terest in the fee. Yet to be determined is the ownership of the remainder in the two-thirds interest. The trial court should proceed promptly to a proper resolution of this issue.

*Reversed.*