**SMS ASSOCIATES, A District of Columbia Limited Partnership, Plaintiff,**

v.

**Ozzie CLAY, et al. Defendants.**

**Civ. A. No. 92–2845.**

United States District Court, District of Columbia.

Nov. 23, 1994.

---

Steven A. Skalet, Kass, Skalet, Segan, Spevack & Van Grack, P.C., Washington, DC, for plaintiff.

Barry Coburn, Washington, DC, for defendant.

## MEMORANDUM ORDER

### Quieting Title to Property

URBINA, District Judge.

### I. Case History

Defendant, Ozzie Clay entered into a contract for the sale of property with the address of 2805 Chesterfield Place, N.W., Washington, D.C., more specifically described as:

Lot 63 in George B. Bryan's Subdivision of Lot 54 in Square 2258, as per plat recorded in Liber 85 at Folio 165, of the Records of the Office of the Surveyor of the District of Columbia, (hereinafter "the property") to the plaintiff.

As a result of defendant Clay's failure to convey the Property pursuant to the contract, plaintiff filed suit on September 1, 1983 in the Superior Court for the District of Columbia against the defendant seeking specific performance of the contract. Pursuant to the Findings of Fact and Conclusions of Law issued in the civil action on July 22, 1985, Judge Kramer granted specific performance and ordered that defendant Clay convey title to the property to the plaintiff in accordance with the terms of the contract. Pursuant to an order signed on June 29, 1992 by Superior Court Judge Kessler, defendant Ozzie Clay was divested of any and all legal and equitable title, right and interest in the property. The Order vested legal and equitable title to the property in the plaintiff. The Order specifically referred to Plaintiff's willingness "to be given title subject to any outstanding liens and encumbrances and to thereafter litigate their validity in a suit to quiet title." Accordingly, this case reaches this Court in the suit to quiet title.

### II. Background

Plaintiff has filed a motion for summary judgment and the defendants have filed an opposition thereto. Plaintiff claims that upon execution of the contract dated May 17, 1983, equitable title to the property passed to plaintiff. Plaintiff argues that any liens incurred by defendant Ozzie Clay after the execution of the contract would not attach to the property under District of Columbia law. The only liens of record at the time of the execution of the contract and filing of the civil action were two deeds of trust from defendant Ozzie Clay dated May 21, 1980 (recorded May 21, 1980) and September 5, 1980 (recorded October 1, 1980, entitled "H. Stern Deed of Trust"). The notes secured by these Deeds have been purchased for value by plaintiff and therefore, H. Stern & Co. is not a party to this action. Plaintiff claims that the liens held by all other defendants in this action were recorded after the

contract for sale was entered into and after the civil action for specific performance was filed. Persons and governmental entities that hold or have held liens against the property include the District of Columbia, the United States, Chester V. McKenzie and Joan C. McKenzie, and Dismer Auxier Company. The District of Columbia and the United States are tax liens creditors of Mr. Clay; defendants Chester V. McKenzie and Joan C. McKenzie are judgment creditors of Mr. Clay; as well as the Dismer Auxier Company.

Plaintiff, SMS, moved for this action to quiet title and Judge Lamberth entered an order on March 18, 1994, requiring the defendants and "all persons having an interest in the property located at 2805 Chesterfield Place, N.W. Washington, D.C. known for the purposes of assessment and taxation as lot 63 in Square 2258, including possible dower interest of the spouse of Ozzie Clay, their unknown heirs and devisees, or any other persons having an interest in said property, to cause their appearance to be entered on or before the twentieth day, excluding Sundays and legal holidays, occurring after the day of the last publication of this order; otherwise, the cause will processed with as in case of default". The publication was to run for six consecutive weeks from the date of the order, which was March 18, 1994.

### III. The Law

■ The doctrine of equitable conversion holds that "equity regards as having been done that which ought to be done, and which equity would order done—namely, the conveyance of the title to the buyer and payment of the price to the seller." ROGER A. CUNNINGHAM, WILLIAM B. STOEBUCK, DALE A. WHITMAN, THE LAW OF PROPERTY, 735 (2nd ed. 1993) [hereinafter CUNNINGHAM]. The District of Columbia both recognizes and adheres to the doctrine of equitable conversion. *See Liberty National Bank of Washington v. Smoot,*

135 F.Supp. 654, 659 (D.C.1955) (holding that "the District of Columbia follows the general rule that a contract of sale of land effects an equitable conversion of the [the land] into personalty ..."); *see also Gustin v. Stegall,* 347 A.2d 917 (D.C.1975).

> Equitable conversion makes sense because of the willingness of court to grant specific performance of an enforceable real estate contract. [As has presently occurred]. Because parties to a real estate contract are able to obtain a decree ordering specific performance of their contract, they can under the doctrine qualify as equitable owners of the title to the property or purchase money even before they bring an action for specific performance of the contract.

6A RICHARD R. POWELL & PATRICK J. ROHAN, THE LAW OF REAL PROPERTY, at 81–98 (1994) [hereinafter POWELL & ROHAN].

In all equitable conversion situations, three prerequisites must be met. First, the contract must be valid. Second, the contract must be enforceable. Third, the contract must affect real estate. *Id.* at 81–99 to 81–100. All three requirements have been met in this case.

Defendant's argument that plaintiff was not accorded equitable title in the land pursuant to the contract of sale entered into in 1983, but rather that plaintiff acquired title when Judge Kessler ordered specific performance of the contract, cannot be credited by the Court. "Equitable conversion results in the conceptualization that the purchaser becomes the equitable owner of the property and the vendor is equitably entitled to the purchase money promised in the contract **as soon as a valid, enforceable contract arises.**" [1] [emphasis supplied] POWELL & ROHAN, *supra,* at 81–96.

■ Furthermore, defendant's reliance on D.C.Code § 45–306 [2] for the proposition

---

1. "In one sense, the relationship between vendor and purchaser is wholly personal, with the right of either to sue the other in event of breach. In another sense, the contract creates a status of vendor-purchaser and the latter acquires real rights in the property due to the possibility of specific performance. Equity ... looks upon the

purchaser as having equitable title to the land even thought he legal title remains in the vendor." JOHN E. CRIBBET AND CORWIN W. JOHNSON, PRINCIPLES OF THE LAW OF PROPERTY, 186 (1989).

2. D.C.Code § 45–306 states:

that an executed or recorded deed is a prerequisite for the doctrine of equitable conversion to apply is misplaced. This statute applies to legal and not equitable title. Moreover, pursuant to the doctrine of equitable conversion, plaintiff acquired equitable title to the property as soon as the 1983 contract was executed. "The idea of an equitable conversion is necessary because no legal title is passed to the purchaser until the contract is actually performed through conveyance by a deed."[3] POWELL & ROHAN, *supra*, at 81-97. Thus the requirement that the defendant would have the Court impose, specifically that a deed be executed or recorded in order for equitable conversion to occur, would defeat the purpose of the equitable conversion doctrine.

## A. Liens Held by Clay Properties and Related Entities

█ Defendant Clay seeks to avail himself of an attempt to convey the property to a trust, said conveyance dated after the date of the contract between the plaintiff and the defendant and not recorded until after the filing of the court order granting specific performance of the contract. In addition, a deed of trust against the property allegedly for past consideration, was executed by Clay after the court ordered specific performance. These liens did not and could not have become effective against the property. Defendant Clay could not grant more than the interest he had in the property after the execution of the contract and the order granting specific performance. Namely, he could only grant an interest in his right to be paid any outstanding sum pursuant to the contract for the sale of the property.

█ Another important point is the fact that in the contract for the sale of the property, a provision was included which provided that the defendant was to provide the property to the plaintiff without liens and/or encumbrances. Therefore, by attempting to encumber the property after the execution of the contract and the order granting specific performance, the defendant has violated the stipulations of the contract.

Defendant Clay argued that in July 1, 1981, prior to the execution of the contract for the sale of property, he made plaintiff (through its general partner, Mr. Sacks) aware of two promissory notes, executed in favor of Clay Properties—one of which was purportedly secured by the property at issue in this case. The defendant states that he informed the plaintiff of the existence of this note. Defendant has supplied the Court with a signed affidavit to this effect. The deed of trust on the property was not executed or filed by the defendant until 1987, after the execution of the contract for the sale of property. However, the defendant argues that the note nevertheless successfully encumbered the property because the plaintiff had knowledge of its existence and therefore was not a bona fide purchaser of the property. Plaintiff, on the other hand, denies that he was ever made aware of the existence of these promissory notes prior to the execution of the contract for the sale of the property.

On November 7, 1994, a status hearing was held. At this time the Court made the parties aware that it was inclined to grant summary judgment for the plaintiff with respect to all defendants except Clay Properties. The Court reserved judgment on Clay Properties due to defendant Clay's argument that he personally made Mr. Sacks, SMS Associates' general partner, aware of the existence of the two promissory notes. The Court presented the parties with the option of conducting a hearing in which one discrete issue would be determined by the Court. Namely, the Court was to ascertain whether the plaintiff and more particularly, Mr. Sacks had knowledge of the existence of the promissory note which was purportedly secured by the

---

No estate of inheritance, of for life, or for a longer term than one year, in any real property, corporeal or incorporeal, in the District of Columbia, or any declaration or limitation of uses in the same, for any of the estates mentioned, shall be created or take effect, except by deed signed and sealed by the grantor, lessor, or declarant, or by will.

**3.** "Similarly, the vendor does not have actual ownership of the purchase money until payment has been completed. While the money is still held by the purchaser, the vendor's right to receive the money is secured by the recognition of an equitable rights to a lien in the property." *Id.*

property at issue in this case. Both parties agreed to have the Court make this credibility determination after the presentation of witnesses and any other pertinent evidence at the hearing.

Before going on to the Court's finding on this issue, the Court feels it necessary to address plaintiff's argument that even if the defendant's allegations were true and plaintiff was aware of the existence of the notes, the promissory notes cannot be effective as against the property in question because they were not recorded until 1987, after the execution of the contract and the order granting specific performance. Plaintiff therefore concludes that as a matter of law it is entitled to summary judgment. The Court cannot concur, District of Columbia law is clear on this point.

■ In *Clay Properties v. Washington Post Co.*, 604 A.2d 890 (1992), the District of Columbia Court of Appeals applied D.C.Code § 45–801 (1990) to a case with a similar background as the present litigation. The Court held that under § 45–801, "a deed conveying an interest in real property is not effective against subsequent bona fide purchasers unless it is recorded. A bona fide purchaser is one 'who acquires an interest in property for a valuable consideration and without notice of any outstanding claims which are held against the property by third parties.'" *Id.* at 894 (quoting R. POWELL & ROHAN, *supra*, at 82–10). In evaluating whether the grant of summary judgment in favor of the purchaser by the trial court was appropriate, the Court stated that in order for the purchaser to prevail it must be established that the purchaser acquired the property without notice of the existence of any prior encumbrance on the property.[4] *Id.* The Court held:

> a purchaser who conducts a proper title search ... is fully protected against all

unrecorded interests falling within the recording statute, with the exception of any as to which the purchaser has actual or inquiry notice.[5] *Id.* at 898.

Plaintiff argues that in the District of Columbia "a deed of trust takes effect only upon execution and delivery, and with respect to bono fide purchasers for value, only after recordation. A security interest would not attach to the property prior to execution and delivery and recordation of the deed of trust." Plaintiff, however, provides no support for these conclusory propositions. On the contrary, "notwithstanding the recording act, interests in real property are legally and effectively transferred ... even if the [conveyancing] document is not recorded. Only if a third party [presently, the plaintiff] should acquire an interest in the property without notice of the unrecorded instrument will the act intervene to deny its enforceability." POWELL, *supra*, at 82–14.

■ The Court in *Clay Properties*, also determined which party had the burden of proving that the purchaser was on notice of the prior unrecorded interest. The Court stated:

> the integrity of the recording system dictates that such notice must be clearly shown, and it is the claimant (here the defendant) of an unrecorded interest who bears the burden of proof to show that the purchaser from the record title holder was on such notice. *Id.*

Although plaintiff is not entitled to summary judgment on this issue as a matter of law, the Court concludes that the claimant has failed to meet the burden of proof required to show that Mr. Sacks had actual notice of the existence of the promissory notes. As a preliminary point, Judge Kramer of the Superior Court for the District of Columbia, who issued the decision ordering that Mr.

---

4. The Court also held that "a title search alone cannot always completely exonerate a purchaser." *Id.*

5. § 45–801 states: Any deed conveying real property in the District, or interest therein, or declaring or limiting any use or trust thereof, executed and acknowledged and certified as provided in §§ 45–306, 45–502, 45–601 to 45–604 and delivered to the person in whose favor the

same is executed, shall be held to take effect from the date of the delivery thereof, **except** that as to creditors and subsequent **bona fide purchasers and mortgagees** *without notice* of said deed, and others interested in said property, it shall only take effect from the time of its delivery to the Recorded of Deeds for record. [emphasis supplied].

Clay convey title to the plaintiff, found in her Findings of Facts that "Mr. Clay did not actually learn the name of the prospective purchaser until after the contract was signed."[6]

Moreover, the Court finds that Mr. Clay's testimony given at the hearing to determine this issue wholly lacks credibility. The testimony was replete with glaring inconsistencies, unsupported assertions, irrelevant propositions, and most importantly, a paucity of documentary evidence that would reasonably support the conclusion that Mr. Sacks had knowledge of the existence of the two promissory notes. Furthermore, the Court finds it incredulous that Mr. Clay, a sophisticated businessman with considerable experience in real estate transactions, would wait until November, 1987 to record the deed of trust memorializing the security interest purportedly given by the promissory note.

### B. Doctrine of Equitable Conversion and Judgment Creditors

The doctrine of equitable conversion has great utility in determining what occurs in the intervening period between the signing of the contract and the delivery of the deed. For instance, "an issue that equitable conversion is often called upon to resolve is the amenability of the contracting parties' interests to the claims of judgment creditors." CUNNINGHAM, *supra*, at 738.

Creditors are able under certain circumstances to claim an interest in a debtor's interests in real estate.

Because of the theory of equitable conversion, the issue arises whether and to what extent a creditor has rights in property that is being sold and purchased under contract. The solution as to what interests a creditor may reach once an enforceable contract for the sale of real estate exists is largely dependent on statutory provisions regarding execution by creditors against a debtor's property and statutes providing for judgment liens. Typically, however, although the seller under equitable conversion may have no more than bare legal title to the real estate, the seller's equitable right to a lien in the property being sold as security for the purchase price is in many jurisdictions viewed as a property interest to which a judgment lien attaches.[7] **However, the value of the judgment lien is measured by the amount of money owed to the seller under the contract rather than the value of the real estate itself.** [emphasis supplied].

POWELL & ROHAN, *supra*, at 81–106 to 81–108.

 The taxes owed by the defendant to the IRS are a judgment lien.[8] As the United States (in its Statement of Non–Opposition to Plaintiff's Motion for Summary Judgment) states,[9] "the tax liens of the IRS attach to the money due defendant Clay from plaintiff in connection with the purchase of the property."[10] 26 U.S.C. § 6321 holds:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including interest, additional amount, addition to tax, or assessable pen-

6. This finding is in direct contradiction to Mr. Clay's position that he gave actual notice to the plaintiff prior to the signing of the contract.

7. Once notified of the lien, the purchaser must make any further payments on the contract to the judgment creditor rather than the vendor. *Id.*

8. The following discussion also applies to Chester V. McKenzie, Joan C. McKenzie and Dismer Auxier Company, who are judgment creditors of Clay. These creditors can only proceed against Clay's right to be paid any remaining sum under the sale contract between himself and the plaintiff.

9. Defendant claims that because the United States is neither a plaintiff or a cross-claimant but merely a defendant in this action, it is not

entitled to the relief requested. Rule 13(g) of the Federal Rules of Civil Procedure allows a party to make a claim against a co-party. However, it must arise out of the transaction or occurrence that is the subject matter of the original action or else relate to property that is the subject matter of the original action, as does the claim asserted by the United States. Cross-claims are within the supplemental jurisdiction of the Court, and thus need no independent jurisdictional grounds.

10. The United States concurs that the plaintiff has priority over the tax liens and therefore does not oppose an order quieting title to the property and question. Moreover, the United States does not oppose plaintiff's motion for summary judgment.

alty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

In *United States v. National Bank of Commerce*, 472 U.S. 713, 719, 105 S.Ct. 2919, 2923–24, 86 L.Ed.2d 565 (1985), the Supreme Court of the United States held that in determining what property or rights to property belong to the delinquent taxpayer, state law controls in determining the nature of the legal interest which the taxpayer has in the property. Since the District of Columbia adheres to the equitable conversion doctrine, the taxpayer (in this case the defendant) has the right to be paid for the property that he sold to the plaintiff. Thus, as the United States concludes, as of May 18, 1983, the date the contract to purchase the property was executed, defendant's Clay interest in the property was a right to payment of all remaining sums due from the plaintiff under the contract. Accordingly, the tax liens have attached to the defendant's right to be paid any outstanding sum due pursuant to the contract for the sale of the property.[11]

### C. Attorneys' Fees

■ Pursuant to Rule 56(g) of the Federal Rules of Civil Procedure the Court awards reasonable attorneys' fees to the plaintiff. However, the award is limited to the attorney's fees and expenses incurred by the plaintiffs in preparation for the November 7, 1994 hearing.

Rule 56(g) states:

Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused the other party to incur, including reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt.

The Court cannot but conclude that Mr. Clay has engaged in dilatory tactics expressly designed to prolong this already unduly protracted litigation. The present case has been entangled in litigation for over ten years and has a tortured history. Throughout the duration of the litigation, the defendant has engaged in questionable tactics which have not only frustrated this Court but the Superior Court for the District of Columbia as well.[12] However, the Court need not consider the past history of the case to invoke Rule 56(g). After considering the pleadings and the evidence presented during various hearings, the Court inevitably concludes that the defendant not only presented affidavits made in bad faith to this Court but also made untrue representations under oath. Accordingly, the court rules that the plaintiff is entitled to reasonable costs and attorneys' fees as may be awarded upon the court's review of the plaintiff's submission of expenses.

### IV. Conclusion

Upon consideration of Plaintiff's Motions for Summary Judgment and Default Judgment, Defendant's Opposition thereto, and the entirety of the record including oral arguments presented to the Court, the Court hereby finds the following:

1. Equitable title to the property transferred to the plaintiff on or about May 17, 1983;

2. A *lis pendens* was created as of September 1, 1983, the date upon which an action for specific performance was filed by plaintiff, thereby providing all defendants

---

**11.** With respect to the defendant's tax liabilities to the District of Columbia, the latter entered into an agreement with the plaintiff in which it agreed to release all lien rights to the property based upon claims against Clay in return for the payment of a specified sum. After the agreement was entered into the District of Columbia recorded additional liens against Clay and related entities based on taxes owed, however, the District has not made any representations in this case with respect to these subsequently filed liens.

**12.** Judge Kessler having expressly stated in her order divesting Mr. Clay of any and all legal and equitable title, that she had considered imposing a variety of sanctions against Mr. Clay due to the defendant's conduct.

with effective notice of the plaintiff's claim of title;

3. The tax liens filed by the United States and the judgment liens filed by Chester V. McKenzie, Joan C. McKenzie and Dismer Auxier Company against Ozzie Clay and/or related entities were all recorded after September 1, 1983, and are ineffective liens as against plaintiff's interest in the property and therefore did not attach to the property;

4. The District of Columbia tax liens filed against Ozzie Clay and/or related entities and recorded after September 1, 1983 do not create liens against the property, are contrary to a written release entered into by and between plaintiff and the District of Columbia and did not attach to the property;

5. Defendant Clay's conveyance of the property by Deed of Gift dated April 1, 1987 to defendant Rohulamin Quander and Leonard Clay, as Trustees for the "Eric O. Clay Irrevocable Trust dated March 31, 1987" and recorded March 3, 1988 as Instrument No. 11900 among the Land Records of the District of Columbia, is null and void as equitable title to the property was held at the time of the conveyance by the plaintiff and defendants Rohulamin Quander and Leonard Clay were not bona fide purchasers without notice as evidenced by plaintiff's Motion for Summary Judgment, which motion was uncontroverted and unopposed by said defendants;

6. Defendant Clay was divested of title to the property pursuant to the Memorandum Order docketed July 1, 1992 in Civil Action No. 10497 in the Superior Court for the District of Columbia; and

7. Defendants Leonard Clay, as Trustee for the Eric O. Clay Irrevocable Trust dated March 31, 1987, Chester V. McKenzie, Joan C. McKenzie, William J. Mockabee, Trustee, Dismer Auxier Company and all other persons claiming an interest in the property known as 2805 Chesterfield Place, N.W., Washington, D.C., Lot 63 in Square 2258 including possible dower interests of the spouses of Ozzie Clay failed to enter an appearance in this matter after being duly served.

Accordingly, for the reasons stated herein, title to the property located at 2805 Chesterfield Place N.W. in the District of Columbia is hereby quieted in the name of SMS Associates, a District of Columbia Limited Partnership.

### *ORDER*

For the reasons stated in the Memorandum Opinion, it is this 23rd day of November, 1994,

**ORDERED,** that title to the property is hereby quieted in plaintiff SMS Associates, a District of Columbia Limited Partnership, with respect to any and all ownership rights, and as to all liens or encumbrances asserted by defendants Ozzie Clay, Clay Properties, Rohulamin Quander and Leonard Clay as Trustees for the "Eric O. Clay Irrevocable Trust dated March 31, 1987", Chester V. McKenzie, Joan C. McKenzie, the District of Columbia, the United States of America Department of the Treasury, the Internal Revenue Service, William J. Mockabee, Trustee, the Dismer Auxier Company, and all other persons claiming an interest in the property known as 2805 Chesterfield Place, N.W., Washington, D.C., Lot 63 in Square 2258 including possible dower interests of the spouses of Ozzie Clay, and that those defendants are hereby forever enjoined and restrained from asserting, claiming or setting up any right, title or interest in or to the property under or because of said claims, liens and encumbrances; and it is

**FURTHER ORDERED** that plaintiff's attorneys shall submit to this Court an affidavit detailing the expenses incurred as in the Memorandum Order.

**SO ORDERED.**